# ESTIN *v.* ESTIN.

No. 139.   Argued February 2–3, 1948.—Decided June 7, 1948.

*James G. Purdy* argued the cause for petitioner. With him on the brief was *Abraham J. Nydick.*

*Roy Guthman* argued the cause and filed a brief for respondent.

Opinion of the Court by MR. JUSTICE DOUGLAS, announced by MR. JUSTICE REED.

This case, here on certiorari to the Court of Appeals of New York, presents an important question under the Full Faith and Credit Clause of the Constitution.[1] Article IV, § 1. It is whether a New York decree awarding respondent $180 per month for her maintenance and support in a separation proceeding survived a Nevada divorce decree which subsequently was granted petitioner.

The parties were married in 1937 and lived together in New York until 1942 when the husband left the wife. There was no issue of the marriage. In 1943 she brought an action against him for a separation. He entered a general appearance. The court, finding that he had abandoned her, granted her a decree of separation and awarded

---

[1] That clause directs that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State" and provides that "Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." By the Act of May 26, 1790, c. 11, 1 Stat. 122, as amended, 28 U. S. C. § 687, Congress provided that the "records and judicial proceedings" of the courts of any State "shall have such faith and credit given to them in every court within the United States, as they have by law or usage in the courts of the State from which they are taken."

her $180 per month as permanent alimony. In January 1944 he went to Nevada where in 1945 he instituted an action for divorce. She was notified of the action by constructive service but entered no appearance in it. In May, 1945, the Nevada court, finding that petitioner had been a bona fide resident of Nevada since January 30, 1944, granted him an absolute divorce "on the ground of three years continual separation, without cohabitation." The Nevada decree made no provision for alimony, though the Nevada court had been advised of the New York decree.

Prior to that time petitioner had made payments of alimony under the New York decree. After entry of the Nevada decree he ceased paying. Thereupon respondent sued in New York for a supplementary judgment for the amount of the arrears. Petitioner appeared in the action and moved to eliminate the alimony provisions of the separation decree by reason of the Nevada decree. The Supreme Court denied the motion and granted respondent judgment for the arrears. 63 N. Y. S. 2d 476. The judgment was affirmed by the Appellate Division, 271 App. Div. 829, 66 N. Y. S. 2d 421, and then by the Court of Appeals. 296 N. Y. 308, 73 N. E. 2d 113.

We held in *Williams* v. *North Carolina,* 317 U. S. 287; 325 U. S. 226, (1) that a divorce decree granted by a State to one of its domiciliaries is entitled to full faith and credit in a bigamy prosecution brought in another State, even though the other spouse was given notice of the divorce proceeding only through constructive service; and (2) that while the finding of domicile by the court that granted the decree is entitled to *prima facie* weight, it is not conclusive in a sister State but might be relitigated there. And see *Esenwein* v. *Esenwein,* 325 U. S. 279. The latter course was followed in this case, as a consequence of which the Supreme Court of New York found, in accord with the Nevada court, that petitioner

"is now and since January, 1944, has been a bona fide resident of the State of Nevada."

Petitioner's argument therefore is that the tail must go with the hide—that since by the Nevada decree, recognized in New York, he and respondent are no longer husband and wife, no legal incidence of the marriage remains. We are given a detailed analysis of New York law to show that the New York courts have no power either by statute or by common law to compel a man to support his ex-wife, that alimony is payable only so long as the relation of husband and wife exists, and that in New York, as in some other states, see *Esenwein* v. *Esenwein, supra,* p. 280, a support order does not survive divorce.

The difficulty with that argument is that the highest court in New York has held in this case that a support order can survive divorce and that this one has survived petitioner's divorce. That conclusion is binding on us, except as it conflicts with the Full Faith and Credit Clause. It is not for us to say whether that ruling squares with what the New York courts said on earlier occasions. It is enough that New York today says that such is her policy. The only question for us is whether New York is powerless to make such a ruling in view of the Nevada decree.

We can put to one side the case where the wife was personally served or where she appeared in the divorce proceedings. Cf. *Yarborough* v. *Yarborough,* 290 U. S. 202; *Davis* v. *Davis,* 305 U. S. 32; *Sherrer* v. *Sherrer, ante,* p. 343; *Coe* v. *Coe, ante,* p. 378. The only service on her in this case was by publication and she made no appearance in the Nevada proceeding. The requirements of procedural due process were satisfied and the domicile of the husband in Nevada was foundation for a decree effecting a change in the marital capacity of both parties in all the other States of the Union, as well as in Nevada.

*Williams* v. *North Carolina,* 317 U. S. 287. But the fact that marital capacity was changed does not mean that every other legal incidence of the marriage was necessarily affected.

Although the point was not adjudicated in *Barber* v. *Barber,* 21 How. 582, 588, the Court in that case recognized that while a divorce decree obtained in Wisconsin by a husband from his absent wife might dissolve the *vinculum* of the marriage, it did not mean that he was freed from payment of alimony under an earlier separation decree granted by New York. An absolutist might quarrel with the result and demand a rule that once a divorce is granted, the whole of the marriage relation is dissolved, leaving no roots or tendrils of any kind. But there are few areas of the law in black and white. The greys are dominant and even among them the shades are innumerable. For the eternal problem of the law is one of making accommodations between conflicting interests. This is why most legal problems end as questions of degree. That is true of the present problem under the Full Faith and Credit Clause.[2] The question involves important considerations both of law and of policy which it is essential to state.

The situations where a judgment of one State has been denied full faith and credit in another State, because its enforcement would contravene the latter's policy, have been few and far between. See *Williams* v. *North Carolina,* 317 U. S. 287, 294–295; *Magnolia Petroleum Co.* v. *Hunt,* 320 U. S. 430, 438–439, and cases cited; *Sherrer* v. *Sherrer, supra.* The Full Faith and Credit Clause is not

---

[2] See Bingham, In the Matter of Haddock v. Haddock, 21 Corn. L. Quart. 393; Radin, The Authenticated Full Faith and Credit Clause, 39 Ill. L. Rev. 1; Holt, The Bones of Haddock v. Haddock, 41 Mich. L. Rev. 1013, 1034; Barnhard, Haddock Reversed—Harbinger of the Divisible Divorce, 31 Geo. L. J. 210; Cook, Is Haddock v. Haddock Overruled, 18 Ind. L. J. 165.

to be applied, accordion-like, to accommodate our personal predilections. It substituted a command for the earlier principles of comity and thus basically altered the status of the States as independent sovereigns. *Williams v. North Carolina,* 317 U. S. 287, 301–302; *Sherrer v. Sherrer, supra.* It ordered submission by one State even to hostile policies reflected in the judgment of another State, because the practical operation of the federal system, which the Constitution designed, demanded it. The fact that the requirements of full faith and credit, so far as judgments are concerned,[3] are exacting, if not inexorable (*Sherrer v. Sherrer, supra*), does not mean, however, that the State of the domicile of one spouse may, through the use of constructive service, enter a decree that changes every legal incidence of the marriage relationship.[4]

Marital status involves the regularity and integrity of the marriage relation. It affects the legitimacy of the offspring of marriage. It is the basis of criminal laws, as the bigamy prosecution in *Williams v. North Carolina* dramatically illustrates. The State has a considerable interest in preventing bigamous marriages and in protecting the offspring of marriages from being bastardized. The interest of the State extends to its domiciliaries. The State should have the power to guard its interest in them by changing or altering their marital status and by protecting them in that changed status throughout the farthest reaches of the nation. For a person domiciled in one State should not be allowed to suffer the penalties of

---

[3] As respects statutes, see the discussion in *Williams v. North Carolina,* 317 U. S. 287, 295–296.

[4] The case is unlike *Thompson v. Thompson,* 226 U. S. 551, where the wife by her conduct forfeited her right to alimony under the laws of the State of the matrimonial domicile where her husband obtained the divorce, and hence could not retain a judgment for maintenance subsequently obtained in another jurisdiction.

bigamy for living outside the State with the only one which the State of his domicile recognizes as his lawful wife. And children born of the only marriage which is lawful in the State of his domicile should not carry the stigma of bastardy when they move elsewhere. These are matters of legitimate concern to the State of the domicile. They entitle the State of the domicile to bring in the absent spouse through constructive service. In no other way could the State of the domicile have and maintain effective control of the marital status of its domiciliaries.

Those are the considerations that have long permitted the State of the matrimonial domicile to change the marital status of the parties by an *ex parte* divorce proceeding, *Thompson* v. *Thompson,* 226 U. S. 551, considerations which in the *Williams* cases we thought were equally applicable to any State in which one spouse had established a bona fide domicile. See 317 U. S. pp. 300–301. But those considerations have little relevancy here. In this case New York evinced a concern with this broken marriage when both parties were domiciled in New York and before Nevada had any concern with it. New York was rightly concerned lest the abandoned spouse be left impoverished and perhaps become a public charge. The problem of her livelihood and support is plainly a matter in which her community had a legitimate interest. The New York court, having jurisdiction over both parties, undertook to protect her by granting her a judgment of permanent alimony. Nevada, however, apparently follows the rule that dissolution of the marriage puts an end to a support order. See *Herrick* v. *Herrick,* 55 Nev. 59, 68, 25 P. 2d 378, 380. But the question is whether Nevada could under any circumstances adjudicate rights of respondent under the New York judgment when she was not personally served or did not appear in the proceeding.

*Bassett* v. *Bassett,* 141 F. 2d 954, held that Nevada could not.[5]  We agree with that view.

The New York judgment is a property interest of respondent, created by New York in a proceeding in which both parties were present.  It imposed obligations on petitioner and granted rights to respondent.  The property interest which it created was an intangible, jurisdiction over which cannot be exerted through control over a physical thing.  Jurisdiction over an intangible can indeed only arise from control or power over the persons whose relationships are the source of the rights and obligations.  Cf. *Curry* v. *McCanless,* 307 U. S. 357, 366.

Jurisdiction over a debtor is sufficient to give the State of his domicile some control over the debt which he owes. It can, for example, levy a tax on its transfer by will (*Blackstone* v. *Miller,* 188 U. S. 189; *State Tax Comm'n* v. *Aldrich,* 316 U. S. 174, 176–177), appropriate it through garnishment or attachment (*Chicago, R. I. & P. R. Co.* v. *Sturm,* 174 U. S. 710; see *Harris* v. *Balk,* 198 U. S. 215), collect it and administer it for the benefit of creditors. (*Clark* v. *Williard,* 294 U. S. 211; *Fischer* v. *American United Ins. Co.,* 314 U. S. 549, 553.) But we are aware of no power which the State of domicile of the debtor has to determine the personal rights of the creditor in the intangible unless the creditor has been personally served or appears in the proceeding.  The existence of any such power has been repeatedly denied.  *Pennoyer* v. *Neff,* 95 U. S. 714; *Hart* v. *Sansom,* 110 U. S. 151; *New York Life Ins. Co.* v. *Dunlevy,* 241 U. S. 518.

We know of no source of power which would take the present case out of that category.  The Nevada decree that is said to wipe out respondent's claim for alimony under the New York judgment is nothing less than an attempt by Nevada to restrain respondent from asserting

---

[5] And see *Miller* v. *Miller,* 200 Iowa 1193, 206 N. W. 262.

her claim under that judgment. That is an attempt to exercise an *in personam* jurisdiction over a person not before the court. That may not be done. Since Nevada had no power to adjudicate respondent's rights in the New York judgment, New York need not give full faith and credit to that phase of Nevada's judgment. A judgment of a court having no jurisdiction to render it is not entitled to the full faith and credit which the Constitution and statute of the United States demand. *Hansberry* v. *Lee*, 311 U. S. 32, 40–41; *Williams* v. *North Carolina*, 325 U. S. 226, 229, and cases cited.

The result in this situation is to make the divorce divisible—to give effect to the Nevada decree insofar as it affects marital status and to make it ineffective on the issue of alimony. It accommodates the interests of both Nevada and New York in this broken marriage by restricting each State to the matters of her dominant concern.

Since Nevada had no jurisdiction to alter respondent's rights in the New York judgment, we do not reach the further question whether in any event that judgment would be entitled to full faith and credit in Nevada. See *Sistare* v. *Sistare*, 218 U. S. 1; *Barber* v. *Barber*, 323 U. S. 77; *Griffin* v. *Griffin*, 327 U. S. 220. And it will be time enough to consider the effect of any discrimination shown to out-of-state *ex parte* divorces when a State makes that its policy.

*Affirmed.*

MR. JUSTICE FRANKFURTER, dissenting.

The Court's opinion appears to rest on three independent grounds:

(1) New York may, consistently with the Full Faith and Credit Clause, hold that a prior separate maintenance decree of one of its courts survives a decree of divorce within the scope of enforceability of the rule in *Williams*

v. *North Carolina,* 317 U. S. 287, whether such divorce is granted in New York or by a sister State;

(2) By virtue of its interest in preventing its citizens from becoming public charges, New York may constitutionally provide that a domestic separate maintenance decree survives a sister-State divorce decree which must be respected in New York under the rule in the first *Williams* case, *supra;*

(3) A separate maintenance decree creates an obligation which may not, consistently with due process, be extinguished by a court lacking personal jurisdiction of the obligee, though possessed of jurisdiction to terminate her marital status, and any judgment purporting to do so is not entitled to extra-State recognition.

To the first of these grounds I assent, and if such is the law of New York I agree that the decision of the New York Court of Appeals in this ·case must be upheld. It is for New York to decide whether its decrees for separate maintenance survive divorce or terminate with it, provided, of course, that its decision is not a mere attempt to defeat a federal right, given by the Full Faith and Credit Clause, under the guise of a determination of State law. Cf. *Davis* v. *Wechsler,* 263 U. S. 22, 24–25.

The second ground presents difficulties. I cannot agree that New York's interest in its residents would justify New York in giving less effect to an enforceable Nevada divorce granted to one domiciled in Nevada, against a spouse not personally served, than it would give to a valid New York divorce similarly obtained. As to this, I agree with the views of my brother JACKSON. If, on the other hand, New York does not so discriminate against enforceable "ex parte" divorce decrees granted by a sister State, no problem under the Full Faith and Credit Clause arises.

Furthermore, if the respondent had obtained her separate maintenance decree in Pennsylvania—which treats such decrees as terminated by any valid divorce, see *Esenwein* v. *Esenwein,* 325 U. S. 279—and had subsequently moved to New York and there brought a suit based on the Pennsylvania decree, it is clear that New York's interest in preventing the respondent from becoming a public charge would not justify refusal to treat the separate maintenance decree as having been terminated. New York would be required to refer to the law of Pennsylvania to determine whether the maintenance decree of that Commonwealth had survived the Nevada divorce, and, finding that it had not, the New York courts could not enforce it.

My difficulty with the third ground of the Court's opinion is that Nevada did not purport, so far as the record discloses, to rule on the survival of the New York separate maintenance decree. Nevada merely established a change in status. It was for New York to determine the effect, with reference to its own law, of that change in status. If it was the law of New York that divorce put an end to its separate maintenance decree, the respondent's decree would have been terminated not by the Nevada divorce but by the consequences, under the New York law, of a change in status, even though brought about by Nevada. Similarly, Nevada could not adjudicate rights in New York realty, but, if New York law provided for dower, a Nevada divorce might or might not terminate a dower interest in New York realty depending on whether or not New York treated dower rights as extinguished by divorce.

If the Nevada decree, insofar as it affected the New York separate maintenance decree, were violative of due process, New York of course would not have to give effect to it. It could not do so even if it wished. If the Nevada

decree involved a violation of due process, there is an end of the matter and other complicated issues need not be considered! It would not matter whether New York had a special interest in preventing its residents from becoming public charges, or whether New York treated maintenance decrees as surviving a valid divorce.

Accordingly, the crucial issue, as I see it, is whether New York has held that *no* "ex parte" divorce decree could terminate a prior New York separate maintenance decree, or whether it has decided merely that no "ex parte" divorce decree of another State could. The opinion of the Court of Appeals leaves this crucial issue in doubt. The prior decisions of the New York courts do not dispel my doubts. Neither do the cases cited in the Court of Appeals' opinion, which, with the exception of *Wagster* v. *Wagster,* 193 Ark. 902, do not involve "ex parte" domestic divorces. New York may legitimately decline to allow any "ex parte" divorce to dissolve its prior separate maintenance decree, but it may not, consistently with *Williams* v. *North Carolina,* 317 U. S. 287, discriminate against a Nevada decree granted to one there domiciled, and afford it less effect than it gives to a decree of its own with similar jurisdictional foundation. I cannot be sure which it has done.

I am reinforced in these views by MR. JUSTICE JACKSON's dissent. As a New York lawyer and the Justice assigned to the Second Circuit, he is presumably not without knowledge of New York law. The Court's opinion is written in a spirit of certitude that the New York law is contrary to that which MR. JUSTICE JACKSON assumes it to be. Thus, on the issue that I deem decisive of the question whether New York has given full faith and credit to the Nevada decree—namely, whether under New York's law divorce decrees based on publication terminate support—her law has thus far not spoken with ascertainable clarity. I would therefore remand the case to the New York Court of Appeals for clarification of its

rationale. ". . . It is . . . important that ambiguous or obscure adjudications by state courts do not stand as barriers to a determination by this Court of the validity under the federal constitution of state action. Intelligent exercise of our appellate powers compels us to ask for the elimination of the obscurities and ambiguities from the opinions in such cases." *Minnesota* v. *National Tea Co.,* 309 U. S. 551, 557.

MR. JUSTICE JACKSON, dissenting.

If there is one thing that the people are entitled to expect from their lawmakers, it is rules of law that will enable individuals to tell whether they are married and, if so, to whom. Today many people who have simply lived in more than one state do not know, and the most learned lawyer cannot advise them with any confidence. The uncertainties that result are not merely technical, nor are they trivial; they affect fundamental rights and relations such as the lawfulness of their cohabitation, their children's legitimacy, their title to property, and even whether they are law-abiding persons or criminals. In a society as mobile and nomadic as ours, such uncertainties affect large numbers of people and create a social problem of some magnitude. It is therefore important that, whatever we do, we shall not add to the confusion. I think that this decision does just that.

These parties lived together in New York State during their entire married life. Courts of that State granted judgment of separation, with award of alimony to the wife, in October 1943. Three months later the husband journeyed to Nevada and in three more months began a divorce action. No process was served on the wife in Nevada; she was put on notice only by constructive service through publication in New York. Notified thus of what was going on, she was put to this choice: to go to Nevada and fight a battle, hopeless under Nevada laws, to keep her New York judgment, or to do nothing. She

did nothing, and the Nevada court granted the husband a divorce without requiring payment of alimony.

Now the question is whether the New York judgment of separation or the Nevada judgment of divorce controls the present obligation to pay alimony. The New York judgment of separation is based on the premise that the parties remain husband and wife, though estranged, and hence the obligation of support, incident to marriage, continues. The Nevada decree is based on the contrary premise that the marriage no longer exists and so obligations dependent on it have ceased.

The Court reaches the Solomon-like conclusion that the Nevada decree is half good and half bad under the full faith and credit clause. It is good to free the husband from the marriage; it is not good to free him from its incidental obligations. Assuming the judgment to be one which the Constitution requires to be recognized at all, I do not see how we can square this decision with the command that it be given *full* faith and credit. For reasons which I stated in dissenting in *Williams* v. *North Carolina,* 317 U. S. 287, I would not give standing under the clause to constructive service divorces obtained on short residence. But if we are to hold this divorce good, I do not see how it can be less good than a divorce would be if rendered by the courts of New York.

As I understand New York law, if, after a decree of separation and alimony, the husband had obtained a New York divorce against his wife, it would terminate her right to alimony. If the Nevada judgment is to have *full* faith and credit, I think it must have the same effect that a similar New York decree would have. I do not see how we can hold that it must be accepted for some purposes and not for others, that he is free of his former marriage but still may be jailed, as he may in New York, for not paying the maintenance of a woman whom the Court is compelled to consider as no longer his wife.