Shientag, J.
This is an appeal from an order denying a motion to increase alimony granted under a separation decree on the ground of change of the husband’s financial ability to pay.
On January 19,1942, the plaintiff, after a trial in the Supreme Court, New York County, in which the issues were contested, obtained a judgment of permanent separation from bed and board of the defendant on the ground of his willful abandonment of the plaintiff since February 12, 1941, without any cause or *271 justification therefor, and with the intent not to return to her. In that action it was found that the parties were married in Brooklyn, New York, on June 17,1926; that they were both residents of the State of New York; that the wife during the entire marriage “ treated the defendant with kindness and forbearance, and conducted herself toward the defendant as a faithful and obedient wife.”
Since the judgment of judicial separation the parties have never lived together. Plaintiff was given custody of the child of the marriage, a daughter then about fourteen years old, with broad rights of visitation to the father. After an appeal to the Appellate Division (264 App. Div. 857), alimony was fixed at $85 a week for the support of wife and child, with the proviso that either party might apply for a modification upon showing a change of circumstances. The alimony was paid by the defendant until shortly before the argument of this appeal, when, in reliance on the holding below, he believed himself to be relieved of any obligation for support.
In April, 1943, the husband filed suit in Nevada against his wife for a divorce, the wife being served in New York City on April 6, 1943. In his complaint, he set forth that he was, and for six weeks prior thereto had been, a bona fide resident of the city of Beno, State of Nevada; he recited his marriage with the plaintiff in this action in the State of New York and alleged £ 1 That during the married life time of the parties, the defendant [wife] began and continued a course of extreme cruelty against the plaintiff, which course of conduct of extreme cruelty persisted and continued subsequent to January 22, 1942 [the date when the judgment of separation in New York was filed], and thereby caused him intense mental pain, anguish and suffering,. and seriously interfered with and impaired his health.”
After being served with the summons in New York City, the wife retained a Nevada lawyer to appear for her and interpose a defense in her behalf in the divorce action. By her answer in the.Nevada action she put in issue the allegations of the complaint with respect to residence and with respect to cruel and inhuman treatment, and set up as a separate and distinct defense the judgment of separation which she had obtained in New York in 1942, including the findings of fact, the conclusions of law and the decree of separation. On her behalf a demand was made for a bill of particulars concerning the allegations of extreme cruelty alleged in the husband’s complaint, *272 but we do not find a copy of any such bill in the judgment roll in the Nevada action which appears in this record. There is, however, a reply interposed by the husband to the wife’s answer in which he admits the judgment of separation and the findings of fact and conclusions of law as set forth in the answer, and that the judgment in the New York separation action has never been modified and is still in full force and effect; but he denies that the judgment entered therein was res judicata “ of all or any of the allegations of extreme cruelty alleged in * * * plaintiff’s complaint herein, or his bill of particulars in support thereof, occurring prior to January 22,1942,” on the ground substantially that the cause of action for separation was abandonment of the wife by the husband and was and is a different cause of action than that set forth by the husband in his action for divorce in Nevada. He further set forth in his reply “ That the facts and things alleged in plaintiff’s complaint and bill of particulars occurring since the 22nd day of January, 1942, are a continuance of a series of acts of extreme cruelty inflicted ‘prior to that date and are directly associated with them.”
The depositions of two witnesses were taken and appear as part of the judgment roll. The deposition of one Monroe Schlichter, apparently a fellow employee of the husband, was to the effect that, between the 20th and 30th of September, 1942, he accompanied the husband to the wife’s apartment so that the husband could remove his belongings before the apartment was vacated because of expiration of the lease; that there was an altercation between the husband and wife; that “ out of curiosity, I looked into the bedroom and saw Mrs. Lynn pick up a large cane which was enclosed in a sheath and aim a blow at Mr. Lynn. However, Mr. Lynn was able to wrest the cane from Mrs. Lynn in time to avoid the blow. After that we hurriedly gathered up Mr. Lynn’s belongings and left the apartment. During all of this time Mrs. Lyn was hurling abuses at Mr. Lynn.”
The deposition of Eoberta Luterman was to the effect that she was a registered nurse who was in charge of Janet Lynn (the daughter of the parties), a patient suffering from diabetes in the private pavilion of the Jewish Hospital in Brooklyn. The nurse recounted the refusal of Mrs. Lynn to allow the husband to visit the sick daughter and her attempted deception of him concerning the child’s physical condition.
The case then went to trial in Nevada on the issue of cruel and inhuman treatment, the bona fides of the husband’s residence not being contested although denied in the answer. The trial took several days; the minutes are not before us, but, in any *273 event, judgment was found in favor of the husband and he was granted a decree of divorce. Apparently ignoring that part of plaintiff’s complaint and his bill of particulars which referred to acts of extreme cruelty occurring prior to the date of the New York judgment of permanent separation, the Nevada court, in its decree of divorce, found that subsequent to January 22, 1942, the. defendant began and continued a course of extreme cruelty against the plaintiff, and so forth. The record further discloses that Finding of Fact 6, when it was submitted to the Nevada court, read as follows: “ That no claim by way of cross-complaint or prayer or allegation by pleading or otherwise was made by the said defendant for alimony, maintenance or support, or for maintenance or support of the minor child of the parties. That every and all such claim was waived in open Court by the attorney for the defendant.”
Before the findings were signed, the last sentence (which is italicized above) was stricken by the court and the change initialed by him. As part of the conclusions of law submitted to the court, there was a provision reading as follows: ‘ ‘ and that the defendant be denied relief by way of alimony, maintenance or support, or for the maintenance or support of the minor child of the parties.” That provision was stricken out and the change likewise initialed by the court.
Two days after he obtained his decree of divorce, this resident of Reno, Nevada, returned to New York City, took out a license to remarry, giving a New York City address, and he was married here on July 18,1943. So far as the record shows, he has lived here ever since, as he had before he went to Reno.
In June, 1948, the plaintiff in this action, the first wife, applied to the court for an order amending the final judgment of separation so as to provide that the defendant pay her the sum of $6,046.63 to defray medical and nursing expenses incurred by .plaintiff for herself and her daughter, and for an increase in alimony to $200 per week. This was contested by the husband, the defendant in this action, on the ground that the decree of divorce obtained by him in Nevada not only severed the marital relationship between the parties, but relieved him of his obligation to support his wife. The court below sustained this contention, and the motion was denied in its entirety, and the appeal is now before us. The defendant continued to pay the $85 a week provided in the separation judgment until shortly before the argument of the appeal and has since stopped all payment of alimony. The daughter, in the meantime, has become of age.
*274 The important question presented on this appeal in the light of the holding below, is: Has the decree of divorce in the Nevada action, which was defended in person by the plaintiff wife under the circumstances here outlined, obliterated the alimony provision for her support contained in the final judgment of separation theretofore entered in her favor in this State?
The Nevada divorce decree cannot be collaterally attacked on the ground that the husband’s residence there was sham and spurious and that in asserting its bona fides he practiced a fraud upon her and the court. (Davis v. Davis, 305 U. S. 32; Sherrer v. Sherrer, 334 U. S. 343; Coe v. Coe, 334 U. S. 378; Frost v. Frost, 260 App. Div. 694.) The wife appeared in the Nevada action, she defended it there; by her answer she put in issue the allegations of the complaint as to residence, although at the trial she did not contest the bona fides of the husband’s residence; and the court made an affirmative finding concerning domicile in favor of the husband.
The plaintiff wife here contends, however, that the support provisions of the prior separation judgment were not obliterated for at least three reasons:
1. No issue concerning alimony was considered in the Nevada court; that court did not pass upon any question of support and in effect disclaimed any such exercise.of jurisdiction.
2. The husband, by his subsequent conduct, is estopped from now asserting that the question of support was determined in Nevada.
3. Basically, the Nevada decree, notwithstanding the wife’s personal appearance there, is not entitled to full faith and credit, even with respect to the dissolution of the marital status, because on its face the Nevada decree was inconsistent with the prior New York judgment of separation, ignored its legal effect, and failed to accord it full faith and credit.
In Estin v. Estin (296 N. Y. 308, affd. 334 U. S. 541), a wife had obtained a judgment of separation, with support provisions, from her husband in New York on the ground of his abandonment. Both parties were residents of this State, and both appeared in the action. Thereafter, the husband went to Nevada, established a bona fide residence there, and obtained an ex parte divorce from his wife on the ground of “ three years continual separation, without cohabitation.” The husband contended that this ex parte divorce superseded the separation judgment and terminated his obligation for support thereunder. The Court of Appeals held that the Nevada statutes authorize the granting of a divorce upon the ground of three years’ *275 continual separation without cohabitation, “ no matter where the fault may lie (Nevada Compiled Laws, § 9467.06), and it is not for us to inquire into the merits of such an exercise of State power. (Williams v. North Carolina, 317 U. S. 287, 300-301, 325 U. S. 226.) ” (P. 312.) In its opinion, the court did not explore the contention here made that the Nevada decree, in its entirety, was not entitled to full faith and credit, because that decree was inconsistent and at variance with a prior valid judgment of our own courts which had, in effect, been denied full faith and credit in the Nevada forum.
However, the Court of Appeals squarely held that while Nevada had jurisdiction to sever the marital relationship, it had no power, not having acquired in personam jurisdiction over the wife, to adjudicate upon her support rights under the prior New York judgment, and that the Nevada decree should not be held in our courts as having any such effect; that, under New York law, in the circumstances presented, the support provisions of our prior separation judgment survived the husband’s ex parte foreign divorce.
The Supreme Court of the United States ruled that the holding of the New York Court of Appeals, giving effect to the Nevada decree so far as it related to marital status, but granting the former wife judgment for arrears of alimony under a prior New York decree of separation, did not deny the full faith and credit to which the Nevada decree was entitled; that “ the highest court in New York has held in this case that a support order can survive divorce and that this one has survived petitioner’s divorce ”, and that New York has power to make such a ruling despite the Nevada decree (Estin v. Estin, 334 U. S. 541, 544). The prevailing opinion of Mr. Justice Douglas summed up the problem as follows: “ The result in this situation is to make the divorce divisible — to give effect to the Nevada decree in so far as it affects marital status and to make it ineffective on the issue of alimony. It accommodates the interests of both Nevada and New York in this broken marriage by restricting each State to the matters of her dominant concern.” (P.549.)
Significantly, the court went on to say: “ Since Nevada had no jurisdiction to alter respondent’s rights in the New York judgment, we do not reach the further question whether in any event that judgment would be entitled to full faith and credit in Nevada.” (See, also, Kreiger v. Kreiger, 297 N. Y. 530.)
Though on first impression startling, what has come to be known as “ a divisible divorce,” that is, a dissolution of the *276 marital status with a continued obligation to support under a prior separation judgment, conforms to fundamental conceptions of natural justice which have been afforded recognition within an appropriate legal pattern. That the dissolution of a marriage may be accompanied with a continued obligation to support is recognized by statute in certain types of annulment. Nevada itself grants alimony to a wife against whom it renders a decree of divorce. Some States have made it a practice to grant alimony to a wife whose husband has obtained a foreign divorce on constructive service. (See Reese and Johnson, The Scope of Full Faith and Credit to Judgments, 49 Col. L. Rev. 153, 168, n. 68.)
Clearly, therefore, if the wronged wife in this case had stayed away from Nevada, even assuming that an ex parte divorce obtained there against her would have been recognized in our courts as valid, her alimony rights under our prior separation judgment would have been secure. Instead, in a spirit of righteous indignation, she went to Nevada to fight “ a hopeless battle ” there.
Did her appearance in Nevada, under the circumstances of this case, obliterate her right to support under the earlier New York judgment? We hold that it did not.
Although the Nevada court in this case had personal jurisdiction over both parties, it was not required to exercise that jurisdiction with respect to both the marital status and the husband’s obligation to support. In fact, in this case, as appears from the statement of facts, the Nevada court expressly refrained from doing so. (See Flood v. Thiesing, 273 App. Div. 548, affd. 298 N. Y. 700.)
That is not only our interpretation of what was done in the Nevada action, that is the way the parties construed it in practical application. The husband himself for many years recognized this, because he not only continued to comply with the New York alimony provision but he took advantage of the provision for alimony in the New York judgment to make deductions therefor from his income tax. It was not until after the decision below on the wife’s application to amend the New York judgment of separation that payments of alimony thereunder ceased and that the husband disclaimed liability therefor. “New York was rightly concerned lest the abandoned spouse be left impoverished and perhaps become a public charge. The problem of her livelihood and support is plainly a matter in which her community had a legitimate interest. The New York court, *277 having jurisdiction over both parties, undertook to protect her by granting her a judgment of permanent alimony.” (Estin v. Estin, 334 U. S. 541, 547, supra.) Where the support of the wife is concerned, where the integrity of our own judgment is involved, a State is not obliged to hold to be res judicata an issue which could have been litigated in a foreign forum but which was not litigated there, and expressly found not to have been litigated on the face of the foreign decree itself. We hold, therefore, that it was the intention of that decree, and of the parties thereto, to keep in full force and effect the provisions as to alimony for the support of the wife and child that had been made in the prior New York separation judgment. Accordingly, there is no obstacle to permitting either party at this time to establish that there has been such a change in circumstances as to warrant a modification of the judgment with respect to alimony.
In the next place, we hold that under the circumstances of this case the husband is estopped from asserting the doctrine of res judicata so far as alimony under the New York judgment is concerned. Our attention has been called to rule XLV of the Rules of the District Court of Nevada, reading as follows: “ No judgment, order, or other judicial act or proceeding, shall be vacated, amended, modified, or corrected by the court or judge rendering, making, or ordering the same, unless the party desiring such vacation, amendment, modification, or correction shall give notice to the adverse party of a motion therefor, within six months after such judgment was rendered, order made, or action or proceeding taken.”
That means that the wife could have applied to the Nevada court for a modification of its decree so as to make provision for her support and maintenance. The husband’s continued payments lulled her into a false sense of security. If the order below be sustained, the wife is helpless. She cannot obtain relief in Nevada, and the provisions in the New York judgment are obliterated. She was misled, to her detriment. Hardship would be done and good conscience offended by a tardily awakened activity on the part of the husband. (Rothschild v. Title Guarantee & Trust Co,. 204 N. Y. 458.)
We have thus far discussed the case from the point of view of considering what was actually litigated in Nevada and have found that the Nevada court deliberately did not decide any question as to the support due the wife. The question of full faith and credit in relation to this judgment, however, goes much deeper and involves matters of general importance as *278 well as of personal concern to these particular litigants. It has long been recognized that the doctrine of full faith and credit is a reciprocal doctrine and that judgments of the State of New York are as binding upon the courts of the State of Nevada, for example, as the judgments of the courts of Nevada are said to be binding upon us. (Durlacher v. Durlacher, 123 F. 2d 70, certiorari denied 315 U. S. 805; Barber v. Barber, 323 U. S. 77.) Moreover, the law of Nevada recognizes the principle (Vickers v. Vickers, 45 Nev. 274).
In the Vickers case Dr. and Mrs. Vickers lived in West Virginia. Mrs. Vickers sued in West Virginia for a separation on the ground of extreme cruelty. Her husband was personally served in West Virginia, appeared in the action and contested it. A judgment of separation, with alimony, was granted to Mrs. Vickers. The husband then went to Nevada and in due course sued for divorce on the ground of extreme cruelty. Mrs. Vickers appeared in person and set up the judgment of the West Virginia court as a bar to Dr. Vickers’ divorce action. The Supreme Court of Nevada held that the prior judgment of separation granted by the West Virginia court was a bar to the Nevada divorce action and dismissed the husband’s complaint. In making this decision, the Nevada Supreme Court cited and followed Harding v. Harding (198 U. S. 317). In that case, the Hardings lived in Illinois and Mrs. Harding was granted a separation, with provision for alimony, in an Illinois action, on grounds of cruelty and adultery. The husband thereafter moved to California and commenced an action for divorce on the grounds of willful desertion. Mrs. Harding denied the allegations and pleaded the Illinois deerée. The Supreme Court of the United States held that the issues in the Illinois case and the California case were practically the same and that under the full faith and credit clause of the Constitution the California court should have held that the Illinois judgment was an estoppel against the assertion of the husband that the wife’s living apart from bim was through any fault on her part or amounted to desertion. The Supreme Court held that the California court had failed to give due faith and credit to the decree of the Illinois court and thereby violated the Constitution of the United States. (See, also, Atherton v. Atherton, 181 U. S. 155.)
With these decisions in mind, it is obvious that the Nevada decree which is before us, and the contents of which have been quoted above, failed, on its face, to give full faith and credit to the New York decree of permanent separation theretofore *279 granted to Mrs. Lynn. That separation decree settled the personal status of Mr. and Mrs. Lynn. Thereafter, Mrs. Lynn owed her husband no further duties except that of chastity. In the face of this decree, the finding of the Nevada court that Mrs. Lynn had been cruel to her husband, after the date of the New York decree, was a finding which, in law, it was not possible to make in view of the adjudicated relations of Mr. and Mrs. Lynn. After the rendering of the New York decree, what might conceivably have been regarded as cruel treatment, had the normal status of husband and wife prevailed, could not possibly be the subject of further matrimonial action. Where there is no duty there can be no breach of it.
There is no statute of Nevada, or any principle of common law, holding that, once a wife has obtained a valid judgment of separation from bed and board adjudicating that she herself was not guilty of cruel and inhuman treatment but was willfully abandoned without justification by her husband, that husband may nevertheless obtain relief in a later matrimonial action because of what are said to have been cruelties committed by the wife after the judgment of separation pursuant to which the parties were living apart. We therefore hold that the Nevada decree in this case is not entitled to full faith and credit in the State of New York because, on its face, it has failed to give due credit to a prior New York judgment governing the same matter.
It may be urged that if Mrs. Lynn was dissatisfied with the decree of the Nevada court she is required to pursue her remedies by appeal in that State and ultimately perhaps to the Supreme Court of the United States. Of course she could have resorted to that costly procedure. But the State of New York also has an interest of paramount importance in maintaining, within constitutional limitations, the validity and integrity of its own judgments, in matrimonial actions especially, because of the danger of the wife and children becoming public charges, and because of the general policy of the State limiting divorce to one statutory ground, that of adultery. There is no reason, either in the Constitution or in conceptions of general policy, why the courts of New York should be prevented from determining, in the first instance, that a Nevada judgment which is presented to it as entitled to full faith and credit nevertheless, on its face, shows that it is not entitled to such credit.
In conclusion, we hold that, under the circumstances of this case, so far as the provisions for alimony are concerned at any *280 rate, the New York judgment of separation remains in full force and effect. Whether, and to what extent, the wife may be entitled to an increase in alimony as demanded, is not passed upon and should be determined only after a full adducement of the facts.
The order appealed from should be reversed with costs, and the matter referred to an official referee to hear and report thereon to the Special Term with his recommendations.