PATRICIA W. VANDERBILT, Appellant-Respondent, *v.* CORNELIUS VANDERBILT, JR., Respondent-Appellant. THOMAS F. McCOY, Receiver and Sequestrator-Respondent.

First Department, December 20, 1955.

4

*Monroe J. Winsten* of counsel (*Charles L. Raskin* with him on the brief; *Monroe J. Winsten,* attorney), for appellant-respondent.

*Sol A. Rosenblatt* of counsel (*Charles Roden* with him on the brief; *Sol A. Rosenblatt,* attorney), for respondent-appellant.

*Jeremiah M. Evarts* for receiver and sequestrator-respondent.

BREITEL, J.   This is a matrimonial action in which plaintiff wife has recovered a judgment, after trial, for maintenance under section 1170-b of the Civil Practice Act.   The action, in the first instance, was the classic one brought for separation under section 1161.   Because of a valid prior decree of divorce in favor of defendant husband obtained in Nevada, without personal jurisdiction over the wife, relief was denied under section 1161 and alternative relief granted under the new statute, section 1170-b. The judgment in favor of plaintiff wife awarded her $250 a week maintenance from the commencement of the action and additional counsel fees of $3,500.   The judgment also declared that the Nevada divorce decree in favor of defendant husband was valid and a bar to plaintiff wife's right to a separation.   Defendant husband entered a special appearance in the case and the court declined to find, as requested by plaintiff wife, that the defendant husband had made a general appearance, thus making the judgment in personam, rather than one quasi in rem and limited to enforcement out of sequestered assets.

Both parties appeal. The husband asserts that the statute, section 1170-b, is unconstitutional and that, in any event, there was no warrant for its application.   The wife, on her appeal, contends that the husband's Nevada divorce was proven invalid, that

the monetary awards are inadequate, and that the court should have found that the husband had appeared generally in the action.

The judgment should be affirmed in all respects.

The case is one of first impression under section 1170-b, enacted by chapter 663 of the Laws of 1953. The statute authorizes a court in a matrimonial action to direct maintenance for a wife " as justice may require ", where the court is otherwise barred from granting a divorce, separation or annulment by reason of the prior granting of a judgment or decree for divorce or annulment in an action in which personal jurisdiction was not obtained over the wife.*

The parties were married on September 7, 1948, in the State of Connecticut. It was the husband's fifth marriage; it was the wife's second. The prior marriages of the parties had been terminated by divorce. At the time of the marriage the husband was domiciled in Nevada. The wife was domiciled in California. Shortly after the marriage and until the physical separation between the parties in September, 1952, the couple were domiciled in California.

There was no issue of the marriage. The wife has a young daughter by her first marriage.

After the parties physically separated in September, 1952, the wife came to New York and, in October of that year, sued for separation. Her complaint was dismissed on February 27, 1953, because she had not resided in New York for one year (Civ. Prac. Act, § 1165-a, subd. 3). Such dismissal is concededly *res judicata* that there had been no actual matrimonial domicile in New York.

---

* The statute reads as follows: " § 1170-b. *Maintenance of wife where divorce or annulment previously granted on non-personal jurisdiction.* In an action for divorce, separation or annulment, or for a declaration of nullity of a void marriage, where the court refuses to grant such relief by reason of a finding by the court that a divorce, annulment or judgment declaring the marriage a nullity had previously been granted to the husband in an action in which jurisdiction over the person of the wife was not obtained, the court may, nevertheless, render in the same action such judgment as justice may require for the maintenance of the wife. The court, by order, at any time thereafter upon the application of either party to the action, after due notice to the other, to be given in such manner as the court shall direct, may annul, vary or modify such judgment. Subject to the provisions of section eleven hundred and seventy-one-b of this act, the authority granted by this section shall extend to unpaid sums or installments accrued prior to the application as well as sums or installments to become due thereafter."

Just before the dismissal of her complaint in the first action, the wife returned to California. She came back to New York on February 12, 1953, and has remained here since. In March, 1953, the husband sued for divorce in Nevada where he claimed to have resumed his domicile. That action was prosecuted by service of process on the wife outside the State of Nevada. She never appeared in that action and therefore no personal jurisdiction was obtained therein over her. It resulted in a decree in favor of the husband on June 30, 1953.

In April, 1954, the wife commenced service by publication in this action. The service was completed by June, 1954. The complaint alleged cruelty and abandonment by the husband and asked simply for a separation with support and maintenance. No reference was made to the Nevada divorce which had in the meantime been obtained by the husband. The husband's assets in New York were sequestered under section 1171-a of the Civil Practice Act. The husband entered a special appearance, and moved to dismiss the complaint and vacate the sequestration on the ground that the wife was, by reason of the Nevada decree, an ex-wife, and that therefore there was no jurisdiction over the person, or the action. The motion was denied with leave to interpose the defense in the husband's answer (133 N. Y. S. 2d 314). This he did, and purported thereafter to defend the case only on the questions that the wife had no domicile in New York, that there was no matrimonial domicile in New York, and that there was no marital status upon which to base the complaint or the sequestration. He did not attend and made no attempt upon the trial to meet by his own testimony or that of other witnesses the issues of cruelty and abandonment.*

The prime issue tendered is whether a wife, who had never theretofore obtained judicial provision for her support, can maintain an action resulting in a direction for maintenance, after divorce in an action brought by the husband in which she was not served personally within the jurisdiction and in which she did not appear nor did she defend. If the answer to that question is in the affirmative, then the next issue is whether on the record the court was authorized to direct maintenance for the wife on the ground that justice so required.

Before the decisions in *Williams* v. *North Carolina* (317 U. S. 287; 325 U. S. 226) the legal concept had prevailed for some time

---

* On this appeal the husband contends that he had no opportunity to meet these issues, but that is not so. The trial court clearly indicated that after it would decide the motion to dismiss at the close of the wife's case, the husband could meet any issues that he considered relevant.

that a valid divorce established an indivisible unitary status, even in a case where the defendant had not been served personally or appeared. This would be true in either the divorcing State or the State of the wife's domicile. In either State, at least as to the same individual, the divorce was totally recognized or could be totally ignored. But it could not, in either of the States, be partly recognized and partly ignored. (*Haddock* v. *Haddock,* 201 U. S. 562.)

In the *Williams* cases the concept evolved that a divorce, based on constructive service alone, could, even in one State, be divisible. Later, the concept was advanced to a further stage, namely, that the marital status between the parties might be severed but that, despite such severance, the husband's economic marital obligation could survive. This development reached its clearest expression in *Estin* v. *Estin* (334 U. S. 541, affg. 296 N. Y. 308). In the *Estin* case it was held that a wife who had not been personally served or appeared was, nevertheless, entitled to enforce as a continuing right a judgment for separation obtained before the husband's decree of divorce in another State. In *Lynn* v. *Lynn* (302 N. Y. 193) it was made quite clear that the divisibility of the divorce decree obtained outside the State would not share the same character of divisibility if the wife appeared or defended the action brought outside the State for a divorce. It was therefore held that a prior support judgment yielded to the overriding effect of the Nevada decree obtained by the husband. In so holding, however, the court reaffirmed the concept of divisible divorce insofar as it applied to divorce decrees obtained on constructive service alone. Said Judge FULD, on behalf of the court: " The ' divisible divorce ', anomalous though it may at first appear, has become a recognized concept; it is now familiar law that a divorce decree may be completely effective to dissolve a marriage and yet completely ineffectual to alter certain legal and economic incidents of that marriage " (pp. 200–201).

What has happened then is that the courts, confronted with legislative difficulties in this area, have fashioned new concepts to meet the peculiar problems arising from the interplay of migrant divorce, the constitutional doctrine of full faith and credit, and the special interest of a State in protecting its residents. Because the fashioning of these concepts is still in process, they, indeed, as Judge FULD said, appear anomalous. The result is, however, that a divorce obtained on constructive service alone now has an effect merely limited to marital status, as distinguished from the obligations that arise from that marital status.

This may not satisfy those who seek systemic consistency in the law and certainty of status in matrimonial relations, but its advocates hope that it represents a more realistic approach.

Yet, in the limited area with which we are now concerned, it would not be true to say that divisibility of marital status and the obligations that flow from it is entirely new. Divisibility always existed as between the spouses to a valid divorce based on constructive service alone. (See *Rigney* v. *Rigney*, 127 N. Y. 408, revd. on other grounds, *sub nom. Laing* v. *Rigney*, 160 U. S. 531, and *Haddock* v. *Haddock*, 201 U. S. 562, *supra*.) That, however, was a kind of vertical divisibility between the parties — one could be divorced and the other not. Now the concept of divisibility moves horizontally between the parties to separate the marital status from the marital obligations in each — both may be divorced for some purposes and not divorced for others.

Evidently, where we now stand, the valid divorce based on constructive service alone appears to be limited to the narrow status of marriage for purposes of remarriage and possible bigamy prosecution. At least, this would seem to be so insofar as the courts have passed on its effects. Certainly, however, the support obligations which derive from marital status are affected only by judgments in which the court has personal jurisdiction of the defendant.

Apart from rationale, the net effect produced by recent decisional law had been to afford severable support status for a wife divorced by constructive service alone, and only where she had prior judicial provision for support. For the wife who had not, prior to such constructive service divorce, obtained a judgment or order for support, there was no available remedy. This was foreseeable in the *Estin* case (334 U. S. 541, affg. 296 N. Y. 308, *supra*). To many, this seemed an unfair discrimination.

In 1953, on the recommendation of the Law Revision Commission, the Legislature enacted section 1170-b (see 1953 Report of N. Y. Law Revision Commission, pp. 463–480).

Said the Law Revision Commission in recommending this enactment:

" A wife who has obtained in New York a separation order with maintenance provisions may enforce these provisions against her husband even though he may subsequently have obtained an *ex parte* foreign divorce entitled to recognition under the Full Faith and Credit Clause of the Constitution of the United States. (*Estin* v. *Estin,* 334 U. S. 541, 68 Sup. Ct. 1213, 92 L. Ed. 1561 (1948).) The husband's divorce must be recognized

as altering the marital status of the parties under the second *Williams* case (*Williams* v. *North Carolina,* 325 U. S. 226, 65 Sup. Ct. 1118, 89 L. Ed. 1577 (1942), but since the New York law was interpreted to permit a maintenance order in a separation action to survive a divorce, the prior maintenance order still prevails as far as the economic relations of the parties are concerned.

" The *Estin* case called attention to the injustice to a New York wife whose husband has obtained a divorce in another state in an *ex parte* proceeding. Unless she had been able to get a separation order with maintenance prior to the foreign divorce, she has no remedy. Under the Civil Practice Act maintenance of the wife may be granted only as an incident to relief in a matrimonial action. Since 1883 it has been accepted law, moreover, that there is no inherent power in the Supreme Court to grant maintenance to a wife independent of statutory authority. *Ramsden* v. *Ramsden,* 91 N. Y. 281 (1883)." (p. 467.)

The statute is no more than a legislative extension of the judicial concept that a divorce based on constructive service is divisible. Under the reasoning in the *Estin* case (*supra*), the State may provide for the enforcement of what are in personam financial obligations of the divorced husband. These obligations are deemed to survive constructive service divorce.* Anomalous though it may seem, it is no longer true that a divorce based on constructive service alone sunders in all aspects the marriage relation. It does so only for the very limited purpose of severing the marital status in the narrowest sense. While the *Estin* case turned on a surviving separation judgment, referred to in that case as a vested property interest, such a judgment merely declares and makes amenable to judicial enforcement a continuing economic obligation derived, but now severable, from the marital status.

Accordingly, the statute is valid for the reasons set forth. Nor is it necessary to the analysis to consider whether the statute may, as a matter of power, apply only to a wife who has had a prior matrimonial domicile in the State. The fact is that *since* she is only " divisibly divorced " she is also " divisibly married ". She is married, and, if wronged, may move the marital domicile with her, for purposes of enforcing the husband's surviving in personam obligations to support and

---

* Obviously, as was intended, the statute, with all its implications, applies to a New York constructive service divorce. (See 1953 Report of the Law Revision Commission, *supra.*) Moreover, a distinction between such New York divorces and foreign divorces would invite grave constitutional objection. (See *Estin* v. *Estin, supra.*)

maintain her. An entirely different question might be presented if the Nevada divorce had been rendered before the wife took residence in New York. As a wronged wife, still undivorced, she brought the matrimonial domicile with her, even if it be only constructive matrimonial domicile. This is so despite the fact that more time was required to elapse before she could qualify to bring a matrimonial action. Put another way, in June, 1953, she was divorced in Nevada by virtue of constructive service alone while a wife resident in New York. New York's law, not California's, therefore, must be examined to determine her marital status, whether " unitary " or " divisible."

Given the validity of the statute, we may turn now to its applicability to this case. The husband contends that the statute, apart from legislative power, and as a matter of interpretation, necessarily implies that there must have been a matrimonial domicile in New York before relief may be obtained under it. There is nothing in the language of the statute to require it. Moreover, there had been proposed legislation which would have made such a requirement, but it was never adopted (Senate Introductory No. 2366, Senate Print No. 2611 [1948]). There are many good reasons which may be suggested for omitting such a requirement. But that policy question is for the Legislature and not the courts to decide. It suffices that the legislative power exists, once the concept of " divisible divorce " is accepted, and there is nothing to sustain the suggested narrower interpretation.

It is also argued that the wife in this case is not a " New York wife " and that the statute was designed only to assist a " New York wife." But, again, given the concept of " divisible divorce," she is a wife — still — for the purpose of obtaining enforcement of the husband's in personam financial obligations. The wife in this case is in New York and has been for the required one year. It is important too that she came here still undivorced.* Thus the statutory requirements for standing to sue are satisfied. But, all this does not mean that our remedies should be available to migrant spouses for the purposes of lawsuits, indiscriminately.

The phrase " as justice may require ", like similar language in section 1170-a of the Civil Practice Act, is designed not to create a right as of course. Rather, these words confer power

---

* If she had come to New York already divorced, it might be necessary to consider whether under the law of California, the State of the last actual marital domicile, any economic marital obligation survived the out-of-State constructive service divorce, and if so, what effect should be given in New York to such survival.

and obligation upon a court of jurisdiction to render directions that serve the public policy of the State and protect its residents in proper cases. It may not be perverted to make of New York a center for migrant wives to litigate matrimonial issues that belong or may be barred elsewhere. In such cases our courts would refuse to grant relief under the rubric in the statute " as justice may require ".

In applying the statutory standard, a distinction should be made between an actual matrimonial domicile, established by intent of persons living together in permanent residence, and a constructive marital domicile, which arises when a wronged wife is entitled to establish the marital domicile wheresoever she will. In any matrimonial action the wife, of course, will have to establish a matrimonial domicile of the one kind or the other. That proposition is, therefore, equally true with respect to assertion of a right to relief under this statute. Where there has been an actual matrimonial domicile in New York, it is easier to satisfy the statute. If there is no actual matrimonial domicile in New York, then it will be incumbent upon the wife to establish other equally significant circumstances before she merits relief under the statute. In this case there was no actual matrimonial domicile in New York, but there are other circumstances which suggest that discretion may be exercised in the wife's behalf.

The husband in this case is a man of many residences, temporary and permanent. His wealth and occupation give him the opportunity, open to very few, to select any one of several domiciles. This makes tenuous the relationship that this couple had to any particular domicile or residence during the four years of their marriage. Moreover, the couple frequently sojourned at the maternal home in New York City. In fact, there were particular rooms in his mother's home that were repeatedly used by the couple when in New York. The bulk of the husband's sources of income has a situs in New York. The wife, on the other hand, is supposedly destitute and is receiving welfare assistance through the City of New York. There is enough in the record from which to infer that in this matrimonial litigation, now in its fourth or fifth action or proceeding, the husband's legal headquarters are in New York. Very telling is the fact that during the marriage, according to the wife's uncontradicted testimony, she received a monthly $1,300 check from the husband's mother, in New York, for the maintenance of the household. These circumstances spell out a nexus with

New York. They also negate exclusiveness of residential relation between the married couple and, say, California, or even Nevada.

Indeed, as one views the facts in this case, it is seen that the husband's ties with New York are great. His family roots and family wealth are here. It is from New York, while they lived in marriage, that the couple obtained their basic income and support. The husband's domicile may vary, but the economic and family tie to New York is persistent. It is here that his wife may alone have effective remedy against his assets. It was not unnatural or sinister for her to come here. For the purpose of enforcing the husband's economic obligation there is interest and jurisdiction in New York enough — the more so now that the wife is a public charge in this State. Accordingly, the wife, in addition to having established residence here before the divorce, and the constructive matrimonial domicile, has also sufficiently established contacts with New York to merit relief under section 1170-b.

The husband makes the point that Special Term did not make a finding that he was a wrongdoer. Clearly, before maintenance may be ordered under section 1170-b, a wife must establish all the elements of one of the standard matrimonial causes of action. The difference is that she is not barred from relief by a divorce decree obtained on constructive service. The wife testified at length and was cross-examined about acts of cruelty — mental and physical — committed by the husband, and that in September, 1952, he abandoned her. Special Term in its opinion found that the husband failed and refused to support the wife, and returned to the State of Nevada for the purpose of re-establishing his domicile and instituting a divorce action against the wife. If added findings with respect to the issue of cruelty are necessary there is sufficient in the record to permit such addition, and it may be effected in the settlement of the order herein.

On the wife's appeal from the finding that the Nevada divorce was valid, there is little substance. Defendant husband supplied ample evidence that he had resumed his domicile in Nevada. This was a case of a man resuming a domicile that he had had for a number of purposes for twenty years before his marriage to this plaintiff. What motivates a man's change in domicile is not important, once it becomes clear that he in fact has effected the change.

On the issue of the husband's special appearance in the action, it is quite evident that he interceded in the action to contest by cross-examination some of the substantive issues on the merits.

But the language of section 237-a of the Civil Practice Act, enacted in 1951, allows precisely that, once Special Term had overruled his objection with leave to raise the defense in his answer. By virtue of the statute he had the opportunity to defend on the merits without jeopardizing his position to raise on appeal the jurisdictional issues tendered. Even though he fail to sustain on appeal his attack on the court's jurisdiction over his person, he is not subject to an in personam judgment.[*] In recommending enactment of the new section 237-a the Judicial Council evidently did not contemplate that effect nor, apparently, did it contemplate the situation that has arisen in this case. (See Sixeenth Annual Report of the N. Y. Judicial Council, 1950, p. 185 *et seq.*, and Seventeenth Annual Report of the N. Y. Judicial Council, 1951, pp. 58–64.) It would seem, however, the fairer practice to permit parties to rely on the language of the statute as it now appears, and if there is to be any limiting of the effect of the wording of the statute it should be done legislatively.

With regard to the allowance made for maintenance and for counsel fees, they are deemed adequate and justified by the record.

Accordingly, the judgment should be affirmed in all respects, with costs to plaintiff. Settle order.

PECK, P. J. (dissenting). I am unable to concur with the majority of the court as to the constitutionality of section 1170-b of the Civil Practice Act. As I read the decision of the Supreme Court in *Estin* v. *Estin* (334 U. S. 541) it turned upon the existence of previously established property rights under a New York judgment. The court held that the Nevada decree did not wipe out the wife's claim for alimony under the New York judgment. It does not follow that the State of the wife's domicile may, subsequent to a valid divorce obtained by the husband in another State, create new alimony rights upon some theory of retaining a continuing and surviving legal or economic interest in the wife's status or support.

Also, I am unable to see how section 1170-b would be made applicable to cases where the divorce was granted in the State of New York. If it is not so applicable, it is discriminatory and violative of the constitutional provision respecting the equal protection of the law.

---

[*] What the situation would be in a truly in rem action it is not proper or necessary to determine in this case.

I therefore dissent and vote to strike from the judgment those provisions which are bottomed upon section 1170-b of the Civil Practice Act.

BASTOW, COX and BERGAN, JJ., concur with BREITEL, J.; PECK, P. J., dissents in opinion.

Judgment affirmed, with costs. Settle order on notice.