REININK v. REININK

1. DIVORCE—DOMICILE—FOREIGN DIVORCE—FULL FAITH AND CREDIT
   —EVIDENCE.

   Defendant in a Michigan suit for separate maintenance did not
   acquire a *bona fide* domicile in another state and his *pro confesso* judgment of divorce there is not entitled to full faith
   and credit in Michigan where the parties were married in·
   Michigan, defendant was employed in Michigan and took a
   three-month leave of absence from his employment when he
   went to the other state after the present action was commenced,
   he retained his membership in local organizations, and he
   resumed his former employment in Michigan two or three days
   after his divorce (U.S. Const., art 4, § 1).

2. HUSBAND AND WIFE—SEPARATE MAINTENANCE—FOREIGN DIVORCE
   —SUPPORT.

   A Michigan court which had complete and personal jurisdiction
   of both parties in a suit for separate maintenance was empowered to adjudicate that the husband was liable for his
   wife's support where the wife sued for separate maintenance
   a few months before her husband obtained a *pro confesso*
   decree of divorce in another state because a divorce so obtained
   does not terminate the Michigan spouse's right to support.

Appeal from Ottawa, Chester A. Ray, J. Submitted Division 3 April 9, 1970, at Grand Rapids.
(Docket No. 7,427.) Decided May 28, 1970.

Complaint by Catherine Reinink for separate maintenance from Albert Reinink. Action dis-

REFERENCE FOR POINTS IN HEADNOTES

[1, 2] 41 Am Jur 2d, Husband and Wife §§ 404, 412.

missed. New trial denied. Plaintiff appeals. Reversed.

*James W. Bussard,* for plaintiff.

*Robert J. Scheuerle,* for defendant.

Before: HOLBROOK, P. J., and BRONSON and E. W. BROWN,* JJ.

BROWN, J. Appellant Catherine Reinink seeks reversal of the decision of the Ottawa county circuit court denying her motion for a new trial and dismissing her suit for separate maintenance. At the hearing held in appellant's separate maintenance suit on June 24, 1968, the defendant placed in evidence a judgment of divorce which he had secured in Arkansas on March 25, 1968. The trial court found that "the Arkansas divorce was obtained in good faith and is valid" and dismissed plaintiff's separate maintenance suit on the ground that the court was "without power to award a sum to plaintiff for her support or to set aside defendant's property for plaintiff's benefit or support."

Appellant contends that the trial court erred in finding that Mr. Reinink acquired a bona fide domicile in Arkansas and that the foreign judgment of divorce was entitled to full faith and credit as provided by the United States Constitution. There is, of course, no question of the right of a state to inquire into and determine whether or not domicile was acquired in a foreign jurisdiction in which a divorce decree is granted. *Gray* v. *Gray* (1948), 320 Mich 49; *Henry* v. *Henry* (1960), 362 Mich 85. Nor is there any question that in attacking a presumptively valid decree of divorce issued by a sister

---

* Circuit judge, sitting on the Court of Appeals by assignment.

State, the full faith and credit clause demands that the attacking party bear the burden of proof that no domicile was established. *Henry, supra,* at p 102.

The Reininks were married in Holland, Michigan, on December 19, 1929, and lived together as husband and wife until August 14, 1965. In 1966 Mr. Reinink instituted an action for divorce in Ottawa county, Michigan. The action was dismissed after trial. On November 7, 1967, Mrs. Reinink commenced suit for separate maintenance under CL 1948, § 552.7 (Stat Ann 1957 Rev § 25.87). Mr. Reinink left for Arkansas on December 19, 1967. He obtained a *pro confesso* divorce in an Arkansas state court on March 25, 1968.

Defendant had worked for the city of Holland for eight years. When he went to Arkansas he took a three-month leave of absence from his employment. He took with him what personal belongings he could carry in his car. He retained his membership in the Lion's Club and VFW in Holland. He promptly returned to Holland two or three days after he secured his divorce and resumed his former employment with the city of Holland. Against this indicia of lack of domicile in Arkansas there is nothing in the record but the bland statement of defendant that he intended to permanently reside in Arkansas and returned to Michigan only because he could not find suitable employment there.

The trial court, we opine, was somewhat charitable in finding that defendant acquired a bona fide domicile in Arkansas. It is true that this Court hears divorce cases *de novo* and we do not generally reverse or modify unless convinced that we would have had to reach a different result had we occupied the position of the trial court. *Wells* v. *Wells* (1951), 330 Mich 448; *Ethridge* v. *Ethridge* (1948), 322 Mich 578. On the basis of the record in this case, we con-

clude that we would have had to reach a different
result. Our review of the testimony requires the
conclusion that defendant did not acquire a *bona fide*
domicile in the State of Arkansas and that his *pro
confesso* judgment of divorce there is not entitled to
full faith and credit in Michigan. As was said in
*Henry, supra,* p 88:

"Michigan law provides no quick and easy divorce.
Nor, when a married couple is domiciled in Mich-
igan, may one party go to another State solely in
order to procure a divorce with the expectation that
it will subsequently be recognized in Michigan. *Gray*
v. *Gray* (1948), 320 Mich 49. This appeal illustrates
the tragic results of ignoring this long-established
rule."

Even if we were to accept the trial court's finding
that the Arkansas decree is entitled to full faith and
credit, that decree would not affect plaintiff's right
to support because Michigan, in *Malcolm* v. *Malcolm*
(1956), 345 Mich 720, adopted the concept of "di-
visible divorce" developed by the New York courts
and the United States Supreme Court.

The United States Supreme Court gave consti-
tutional approval to the idea in *Estin* v. *Estin* (1948),
334 US 541 (68 S Ct 1213, 92 L Ed 1561). Mrs.
Estin brought an action for separate maintenance in
New York before her husband sued for divorce in
Nevada. Nevada's *pro confesso* decree purported
to terminate any support obligation of the husband.
In affirming a subsequent New York determination
that Mr. Estin's obligation continued despite the
Nevada decree, Justice Douglas said:

"New York was rightly concerned lest the aban-
doned spouse be left impoverished and perhaps be-
come a public charge. The problem of her livelihood

and support is plainly a matter in which her community had a legitimate interest." 334 US at 547.
* * *

"The result of this situation is to make the divorce divisible—to give effect to the Nevada decree insofar as it affects marital status and to make it ineffective on the issue of alimony. It accommodates the interests of both Nevada and New York in this broken marriage by restricting each State to the matters of her dominant concern." 334 US at 549.

In *Vanderbilt* v. *Vanderbilt* (1957), 354 US 416 (77 S Ct 1360, 1 L Ed 2d 1456), the Supreme Court made clear that the time sequence of the actions in *Estin* made no difference; the separate maintenance action could be brought after the foreign divorce decree.

In *Malcolm, supra,* as in the present case, the wife sued for separate maintenance in Michigan a few months before her husband obtained a *pro confesso* decree of divorce in Nevada. The trial court awarded support for the wife and the Supreme Court affirmed saying:

"Failure of the Nevada court to pronounce * * * judgment respecting support by Mr. Malcolm of Mrs. Malcolm left our circuit court free to adjudicate upon the matter * * * . This would be so even if the Nevada court had expressly assumed to determine judicially that the husband need no longer support his original mate." 345 Mich 726.

Thus it would appear clear that a *pro confesso* decree of divorce obtained in another state does not terminate the Michigan spouse's right to support.

Reversed. Costs to plaintiff.

All concurred.