VIRGINIA BRADY

*v.*

JOSEPH BRADY

(No. 12617)

Submitted September 12, 1967. Decided November 7, 1967.

Calhoun, President, dissenting.

*George M. Cooper,* for appellant.

*William M. Kidd,* for appellee.

BERRY, JUDGE:

This proceeding arose out of a suit for separate maintenance instituted by the appellee, Virginia Brady, in the Circuit Court of Braxton County against the appellant, Joseph Brady, in which on February 28, 1958, an order was entered by John H. Fox, Special Judge, that the said Joseph Brady pay to the said Virginia Brady the sum of $200 per month for the support and maintenance of the appellee and their infant child, Jack Lawrence Brady. On October 10, 1963, the appellant herein obtained a divorce from the appellee in Arkansas by order of publication. On or about February 17, 1964 the appellant filed a petition with a certified copy of the Arkansas divorce decree attached thereto in the Circuit Court of Braxton County praying that the judgment in the separate maintenance suit be modified, altered and changed and that he not be required to pay the said Virginia Brady anything for her maintenance and support because of a divorce obtained from her in Arkansas which relieved him of such payments. The Arkansas decree not only granted to Joseph Brady a divorce but granted as alimony and child support the same amount that the West Virginia Court had previously decreed for the maintenance and support of the minor child and Virginia Brady, by ordering the said Joseph Brady to pay $200 per month for the support and maintenance of the minor child, Jack L. Brady, and the said Virginia Brady. While not so termed, the money awarded to the wife in the Arkansas decree would technically be considered as *alimony* in West

902

Virginia since it was payable as a result of and subsequent to a divorce. Virginia Brady filed an answer to the petition of Joseph Brady in which she did not attack or challenge the Arkansas divorce decree in any manner but merely asked that the petition be dismissed because no change of condition was alleged since the same sum was awarded by the separate maintenance suit and the Arkansas decree for divorce, as shown by the exhibit filed with the petition, and therefore was not subject to modification. The said Virginia Brady then filed a petition in the Circuit Court of Braxton County on December 8, 1964, alleging that the order of the Circuit Court of Braxton County of February 28, 1958, had not been superseded, annulled or modified and praying that the said Joseph Brady be compelled to pay the said Virginia Brady the amount in arrears of $245 required to be paid under said judgment and that he be adjudged in contempt for the failure to make such payments. The said Joseph Brady answered this petition and denied that he owed the said Virginia Brady the amount she claimed and asserted instead that he had overpaid her and owed her nothing. He later abandoned his claim that he should be given credit for certain payments. The Judge of the Circuit Court of Braxton County disqualified himself as he had done initially and transferred the case to the Circuit Court of Nicholas County. On January 5, 1966 the Circuit Court of Nicholas County, after a full hearing on September 24, 1965, found that the Arkansas divorce decree of October 10, 1963 did not supersede or annul the West Virginia decree of separate maintenance dated February 28, 1958, that said decree should not be modified and that the said Joseph Brady owed the said Virginia Brady the sum of $2254.13, and dismissed the petition filed by the appellant. The trial court also found the said Joseph Brady guilty of contempt for the failure to pay the maintenance and support money to Virginia Brady under the West Virginia decree and sentenced him to 60 days in jail

and ordered him to pay the costs of the proceeding, but suspended the sentence for a period of 30 days in which to allow the said Joseph Brady to purge himself of said contempt by paying the amount found to be due the said Virginia Brady, together with the costs of the proceeding. On January 5, 1966 Joseph Brady, by counsel, moved the Circuit Court of Nicholas County to grant him a new trial, which was overruled on that date.

Upon application to this Court an appeal and supersedeas to the judgment of January 5, 1966 were granted October 10, 1966. The case was submitted for decision upon arguments and briefs at the September Regular Term, 1967 of this Court.

The appellant, Joseph Brady, proved his divorce obtained in Arkansas by filing in this proceeding a certified copy of the decree which apparently complies in substance with the provisions of Rule 44 (a), R.C.P., dealing with proof of official records, although the certificate thereon should have been more specific that the decree came from the custody of the signer thereof. No objection was made to its form, however.

Although there was no personal service on the said Virginia Brady or personal appearance by her in the Arkansas divorce proceedings she did not attack the judgment in any manner and has waived any question as to its validity in its entirety in this proceeding. The Arkansas divorce decree was therefore made a judgment in this State. *Williams v. North Carolina,* 325 U. S. 226, 65 Sup. Ct. Rep. 1092. The entire judgment would have to be given full faith and credit and not just a part of it as far as the appellant, Joseph Brady, is concerned, because he instituted the suit and apparently was personally present in Arkansas, under the jurisdiction of its courts when the judgment was rendered. The pertinent part of the Arkansas decree reads as follows:

"IT IS, THEREFORE, BY THE COURT considered, ordered, adjudged and decreed that the plaintiff be, and he is hereby, awarded a complete and absolute divorce from the defendant herein; and the plaintiff is hereby directed to pay $200.00 per month toward the support and maintenance of the minor child, Jack L. Brady, and the defendant, Virginia M. Brady; and the plaintiff is hereby restored to all rights and privileges of a single and unmarried person." There was no hiatus between the provisions of the identical matters in the West Virginia maintenance and support decree of February 28, 1958, and the alimony and child support in the Arkansas divorce decree of October 10, 1963. It would clearly appear that if not attacked on jurisdictional grounds the Arkansas decree could be enforced in this State.

Notwithstanding the above situation the appellee, Virginia Brady, contends that regardless of the Arkansas divorce the West Virginia maintenance and support decree is not superseded or annulled by the Arkansas divorce decree and should be enforced by the West Virginia Court. In support of this contention she relies on the case of *Estin v. Estin*, 334 U. S. 541, 68 Sup. Ct. Rep. 1213, 92 L.Ed. 1561, 1 A.L.R. 2d 1412. This case advanced the so-called "divisible theory" in divorce cases, i.e., that the divorce itself was a proceeding *in rem* which affected the status of the parties but that an alimony or maintenance or support decree was *in personam* and therefore required personal service to be effective outside a state. In the *Estin* case the wife obtained a maintenance and support decree in New York and the husband later obtained a divorce from the wife in Nevada and the divorce decree had no provisions for any support for the wife. Service was had by order of publication in Nevada and there was no personal appearance by the wife. The Supreme Court of the United States held that although the Nevada decree was entitled to full faith and credit as to the divorce it was ineffective as to the New York maintenance

and support decree. This rule has been followed in many subsequent cases. *Kreiger v. Kreiger,* 334 U. S. 555, 68 S. Ct. 1221, 92 L. Ed. 1572; *Armstrong v. Armstrong,* 350 U. S. 568, 76 S. Ct. 629, 100 L. Ed. 705, rehearing denied 351 U. S. 943, 76 S. Ct. 832, 100 L. Ed. 1469; *Vanderbilt v. Vanderbilt,* 354 U. S. 416, 77 S. Ct. 1360, 1 L. Ed. 2d 1456.

It appears from the authorities that this rule is applicable only where the laws of the state allow such recovery of support money by the wife after the husband had obtained a divorce. See 24 Am. Jur. 2nd, Divorce and Separation, § 993; *Esenwein v. Commonwealth of Pennsylvania,* 325 U. S. 279, 65 S. Ct. 1118, 89 L. Ed. 1608; *Estin v. Estin, supra; Lewis v. Lewis,* (Cal.) 317 P. 2d 987; Morris, Divisible Divorce, 64 Harvard Law Review, 1287.

The *Esenwein* case clearly presents this matter wherein the Court stated that under the Pennsylvania law a support order did not survive a divorce and if the Nevada divorce decree was given full faith and credit it would cut off the maintenance and support decree previously obtained in Pennsylvania. However, the Nevada divorce was attacked on jurisdictional grounds and held void which left the maintenance and divorce decree in Pennsylvania in full force and effect. In the *Estin* case the opinion clearly shows that the highest court in New York had held that in New York a support order can survive a divorce and that the particular support order survived the divorce decree in that case. In the *Lewis* case Justice Traynor clearly stated the rule in the following language: ''Defendant acknowledges the settled rule that when a wife has secured a judgment of separate maintenance in the state of her domicile, her right to support thereunder will survive a subsequent valid, ex parte, foreign decree of divorce secured by her husband *if the law of her domicile so provides.*'' [Emphasis supplied.] It is further stated in that case in connection with this question that:

"The effect on a wife's right to support of a foreign, ex parte divorce secured by her husband is determined by reference to the law of the state of the wife's domicile at the time of the divorce, in this case the law of Illinois."

In the case of *Armstrong v. Armstrong, supra,* the husband obtained a divorce from his wife in Florida who had separated from him and gone to the State of Ohio where she established a residence. Constructive service was obtained on the wife and she did not appear in the Florida Court and the Florida Court, in addition to granting the divorce, further decreed that " * * * no award of alimony be made to the defendant." The wife later sued her husband in Ohio for divorce and alimony and the husband appeared and set up the Florida divorce as a defense. The Ohio Court denied the wife a divorce because of the prior Florida decree but granted her alimony. This was done under a statute allowing alimony to be granted to a wife after a divorce had been obtained by the husband. This has caused confusion with regard to the meaning of the terms alimony and separate maintenance and support and is no doubt the reason for the use of the term alimony by the authorities in connection with this matter where the divisible divorce doctrine is discussed. Technically, before the "divisible" divorce doctrine was introduced, alimony could only be granted at the time of a divorce. Separate maintenance and support could always be granted without a divorce. This matter is discussed in 24 Am. Jur. 2d, Divorce and Separation, § 992, citing the *Armstrong* and *Vanderbilt* cases for authority, wherein it is stated: "The divorce court must have jurisdiction of the wife in personam in order to adjudicate or cut off her right to alimony. While a court may gain jurisdiction to grant a divorce by constructive service upon a nonresident wife, such a service does not give it jurisdiction to adjudicate alimony rights, and so it is held that an ex parte divorce obtained by the husband cannot affect the right which the

wife may have to alimony *under the laws of another state,* and any express or implied adjudication against her claim is void and will not be given effect by comity or under the full faith and credit clause. As hereinafter appears, *the law of the forum may permit an allowance of alimony notwithstanding a prior divorce."* [Emphasis supplied.] Section 993 deals with the matter in the following language: " * * * A judgment for alimony is a property right, intangible in nature, and jurisdiction over an intangible can only arise from jurisdiction over the person. If, therefore, the husband obtains a foreign divorce upon constructive service, the divorce court does not have jurisdiction to terminate the right, *and where, under the law of the state which granted alimony,* the judgment survives an ex parte divorce, it may be enforced in that state." [Emphasis supplied.]

The *Vanderbilt* case cited the New York Civil Practice Act that allowed a wife to obtain maintenance and support after the husband obtained a divorce and it also specifically disapproved the case of *Thompson v. Thompson,* 226 U. S. 551, 33 S. Ct. 129, 57 L. Ed. 347, insofar as it held ipso facto that an ex parte divorce destroyed alimony rights and in effect held that it was no longer controlling in such cases where the divisible divorce doctrine had been adopted. The courts in some states held long before the *Estin* case that a divorce decree obtained by the husband in another state upon the wife did not affect the decree for separate maintenance and that it continued in force and effect until directly modified by the court granting it. 27 Am. Jur., Husband and Wife, § 429. The law in West Virginia, however, has been that a decree of absolute divorce terminates the right of a wife to separate maintenance and support and we are not inclined to overrule the cases on this matter at this time. *Chapman v. Parsons,* 66 W. Va. 307, 66 S.E. 461, 24 L.R.A. (N.S.) 1915; *Wolford v. Wolford,* 133 W. Va. 403, 56 S.E. 2d 614; *Snyder v. Lane,* 135 W. Va. 887, 65 S.E. 2d 483.

Apparently from the vast number of decisions and statutes in America attempting to define alimony, support and maintenance, there is no magic in the words themselves. They have been applied interchangeably or restricted to special meanings according to what state attempted to construe them. See Title "Alimony" in Vol. 3, Words and Phrases. Our own statutes and some decisions reflect the confusion. Code, 48-2-15, as amended, referring to the allowance on divorce calls it "Alimony" in the title but "maintenance" in the body of the statute. Code, 48-2-29, as amended, has the title "Suit for Separate Maintenance" but refers to the monetary allowance resulting therefrom as "alimony and separate maintenance." Laymen commonly think of alimony as granted to an ex-wife on divorce and support as granted to one who is still a wife. The confusion in decisions largely results from statutes twisting the meaning of Latin words and from historical changes in the treatment of divorce. See *Lynde v. Lynde,* 52 A. 694, 64 N. J. Eq. 736 for historical background. Of course until 1935 West Virginia had two types of divorce, one in effect a legal separation, the other an absolute; the abolition of the first type left our separate maintenance suit restricted to support prior to divorce, and a later divorce necessarily superseded the non-divorce allowances because it terminated the status on which separate maintenance rested. Therefore, regardless of the word by which an allowance is called in West Virginia, the allowance resulting from divorce is a different type of allowance from that existing during a separation, and necessarily supersedes the separate maintenance award, even though the divorce be granted in another state but be entitled to full faith and credit here.

The statute in this State with regard to the obtaining of separate maintenance, Code, 48-2-29, as amended, contemplates that the marital relation exists between the husband and wife because it provides that when a husband fails without good and sufficient cause

to support his wife, at the suit of the *wife* maintenance and support can be obtained for her and the minor children of the parties. It is stated in the Chapman case at page 311 as follows: "Maintenance of the wife by the husband is alone incident to the marriage relation. *There is no duty to furnish maintenance when that relation does not exist.* Alimony is cognizable by a court only in regard to the relation of husband and wife. It springs from marital duties. The statutes to which we have referred plainly recognize that the marital relation is the source of alimony." [Emphasis supplied.]

It was held in the case of *Wolford v. Wolford, supra,* that: "The main purpose of a suit for separate maintenance, when no divorce is prayed for, is to require the *husband to support his wife during the existence of the marriage,* whereas the real object of a suit for divorce is the dissolution of the marriage contract in which the State has a direct and vital interest." [Emphasis supplied.] This case was decided in 1949 after the 1935 revision of our divorce statutes.

In the case of *Snyder v. Lane, supra,* decided in 1951, this matter is dealt with in Point 1 of the syllabus wherein it is stated: "It is the duty of a husband to maintain and support his wife *while the marital relation exists,* unless by her conduct or for some other sufficient reason he is relieved of that duty; and a court of equity has jurisdiction, in a suit for separate maintenance and support, to require him to perform such duty." [Emphasis supplied.] Unless a divorce decree from a foreign state is attacked on jurisdictional grounds a sister state must give it full faith and credit under the provisions of that clause of the Constitution of the United States. *Williams v. North Carolina,* 317 U. S. 287, 63 S. Ct. Rep. 207, 87 L. Ed. 279, 143 A.L.R. 1273; *Williams v. North Carolina,* 325 U. S. 226, 65 S. Ct. Rep. 1092, 89 L. Ed. 1577, 157 A.L.R. 1366. This Court recognized that full faith and credit must be given to divorce decrees of sister

states long before the above cases were decided, which was clearly stated in the case of *Caswell v. Caswell,* 84 W. Va. 575, 584, 100 S.E. 482, in the following language: "The copy of the proceedings from the district court of Logan county, Oklahoma, being duly and properly certified, and it not appearing therefrom that the court was without jurisdiction, and the decree being such as is entitled to full faith and credit in the courts of that territory, now the State of Oklahoma, the policy of our law as declared in section 19 of chapter 130, Code, entitles it to the same faith and credit in the courts of this state. *Haddock v. Haddock,* 201 U. S. 562, on which plaintiff relies, does not determine the law of this State. That was a case which went up from the Court of Appeals of the State of New York, and the decision therein turned upon the policy of that state, which was not to recognize as binding upon one of its citizens a decree of divorce obtained in a court of a sister state, upon a service of process by order of publication, when it appeared that the parties had never cohabited as man and wife in the state wherein the divorce was decreed. It was held in that case, by a divided court, that Sec. 1 of Art. IV of the Constitution, requiring the courts of each state to give full faith and credit to the public acts, records, and judicial proceedings of every other state, did not compel a state court, in violation of the state's own policy, to give full faith and credit to a default decree of divorce, based upon an order of publication, when it appeared there had been no matrimonial residence of the parties in the state wherein the divorce was obtained. But the policy of our state, as shown by the statute above referred to, differs from the policy of the State of New York. No lack of jurisdiction in the Oklahoma court appearing, our conclusion is that the lower court properly overruled the first exception to defendant's answer."

It may be interesting to note that since the *Caswell* case was decided by this Court holding that full faith and credit should be given to the decrees of the courts

of sister states, unless they are attacked on jurisdictional grounds, the Haddock case has been specifically overruled by the Supreme Court of the United States in the first *Williams* case, 317 U. S. 287, hereinbefore cited, requiring the courts of all the states in this country to give full faith and credit to sister states where process is obtained by order of publication unless the decree is attacked on jurisdictional grounds.

In the case at bar, as heretofore stated, the Arkansas Court did not refuse or fail to pass on the question of alimony or support for the wife as was done in most of the cases dealing with this matter. The Arkansas Court provided for the maintenance and support of the wife and the provisions pertaining thereto are identical to the West Virginia maintenance and support decree. It may well be that under the "divisible divorce" doctrine where a divorce is obtained with constructive service on the wife and alimony or support is awarded the wife in the divorce proceeding although she did not personally appear, she could object to such award if not satisfied with the amount. See *Dorney v. Dorney,* (W. Va.) 245 Fed. 2d 201. However, the wife did not object to the award of alimony or support in this case and waived any question in connection therewith.

It is contended by the appellant that misconduct on the part of the wife bars her right to support or alimony. This may be true where it is applicable, but it certainly does not apply to the case at bar. There is no proof of any misconduct on the part of the appellee. The appellant relied on the Arkansas divorce decree granted to him to establish the fact that the appellee was guilty of misconduct prior to the date he obtained the divorce. This contention is without merit because the Arkansas decree clearly states that the ground upon which the decree is based is that the parties had been separated for "* * * three years continuous separation without cohabita-

tion as husband and wife \* \* \*'', which is not misconduct in West Virginia and perhaps not in Arkansas. Then, too, the separate maintenance suit in West Virginia legally provided for such separation.

It would therefore appear under the law of this State that the appellee, Virginia Brady, is not entitled to maintenance and support in accordance with the decree of the Circuit Court of Braxton County entered on February 28, 1958, because the divorce decree granted by the State of Arkansas was properly made a judgment in this State at the hearing in the trial court by the filing at the start of the proceedings in West Virginia of a petition of the appellant with which was exhibited a certified copy of the Arkansas decree from the clerk in whose custody the records were kept, particularly inasmuch as this Arkansas decree was not attacked on jurisdictional grounds by the said Virginia Brady, although the record indicates that such an attack might be warranted. Inasmuch as West Virginia does not recognize the ''divisible divorce'' doctrine referred to in the *Estin, Vanderbilt, Armstrong, Lewis* and other similar cases involving states which have statutes or laws allowing such theory to obtain in the matter of separate maintenance or support persisting independently of divorce, full faith and credit must be given to the Arkansas divorce decree by this State in accordance with the decisions of the Supreme Court of the United States and the law of this State, Code, 57-1-12.

However, it would appear that the said Virginia Brady is entitled to be paid alimony and support money in the amount of $200 per month from the said Joseph Brady for her and their infant child, Jack Brady, under the decree of the Arkansas Court which so provided if she so desires. The appellant, Joseph Brady, can not object if the decree is not attacked on jurisdictional grounds because he instituted the divorce proceedings in Arkansas, was personally present when the personal

judgment against him was rendered and full faith and credit must be given to the entire decree. It is true that regardless of whether the decree of separate maintenance and support is recognized in this State after the divorce as far as the wife is concerned, it is always the duty of the father to support his infant son. That would not be under the provisions of the maintenance or support decree entered by the Circuit Court of Braxton County in 1958 but by a separate proceeding on behalf of the infant son.

Although we are of the opinion that the said Virginia Brady is entitled to what we commonly call alimony under the Arkansas decree if it is not attacked on jurisdictional grounds, she must ask for such enforcement in the Courts of this State if her former husband fails to comply with the provisions of the Arkansas decree with regard to such matter. During the proceeding in the case at bar she moved that his petition with the certified copy of the Arkansas decree be dismissed which motion was granted by the trial court indicating that she did not desire at that time to rely on the Arkansas decree relating to the award of alimony.

Inasmuch as the said Virginia Brady can not rely on the provisions of the West Virginia maintenance and support decree as long as the Arkansas divorce decree is not challenged except for any payments that may have been in the arrears up until the time of the entry of the Arkansas divorce decree on October 10, 1963, the judgment of the Circuit Court of Nicholas County is reversed as to its finding of contempt based upon the West Virginia maintenance and support decree after the Arkansas divorce decree was proved and made a judgment in this State. If the said Virginia Brady desires to rely on the provisions for alimony in the Arkansas decree she may institute proper proceedings to do so.

For the reasons stated herein, the judgment of the Circuit Court of Nicholas County is reversed.

*Reversed.*

CALHOUN, PRESIDENT, dissenting:

Respectfully, I dissent from the decision in this case, not only because, in my judgment, it is contrary to law and the weight of authority, but also contrary to common sense, reason and justice.

Basically, perhaps, my dissent to the opinion, from a purely legal standpoint, is that it applies the doctrine of full faith and credit in reverse. At the time the Arkansas court acted in the ex parte divorce suit pending in that court, having only in rem jurisdiction, there was in full force and effect in this state an in personam judgment rendered by a court of general jurisdiction for the benefit of the wife and the son of the parties.

The in personam rights of the wife and her infant son in the West Virginia judgment were beyond the reach of the Arkansas court in that in rem proceeding to which the infant son was not a party in any sense and to which the wife was a party only on the basis of constructive service.

The mere jurisdiction of the res, of the marital status, gave no jurisdiction to the Arkansas court to interfere with, to modify or to nullify the in personam rights of the wife and incidentally of her son, in the existing judgment rendered in this state by a court of general jurisdiction which had, not only jurisdiction of the entire subject matter, but also personal jurisdiction of both the husband and the wife and a consequent right, duty and jurisdiction to make proper provision for the support of the wife and the infant son of the parties.

In justice to the judge of the Arkansas court, I believe it should be made clear that the order entered by him discloses that he properly and deliberately gave full faith and credit, pursuant to the constitutional mandate, to the West Virginia judgment, and that he properly recognized that he had no right, authority or jurisdiction to disturb, modify, supersede or nullify

the West Virginia judgment. The Arkansas court adjudged that the husband "is a resident of the Eastern District of Clay County, Arkansas, and has been for more than ninety days", and thereafter stated the following in its order:

"* * * that the minor child, Jack L. Brady, is living with the defendant in West Virginia and the West Virginia Court has ordered the plaintiff to pay $200.00 per month toward the support and maintenance of said minor child and the defendant, Virginia M. Brady.

"IT IS, THEREFORE, BY THE COURT considered, ordered, adjudged and decreed that the plaintiff be, and he is hereby, awarded a complete and absolute divorce from the defendant herein; and the plaintiff is hereby directed to pay $200.00 per month toward the support and maintenance of the minor child, Jack L. Brady, and the defendant, Virginia M. Brady; * * *."

I believe, therefore, that this Court, without any basis for doing so, has improperly, and perhaps even with unbecoming impropriety and lack of deference to the judge of the Arkansas court, charged that the judge of that court failed to discharge his constitutional duty to give full faith and credit to the West Virginia judgment.

Furthermore, the Court in its opinion in this case has taken a position in behalf of the husband contrary to that which he took in his petition filed in the Circuit Court of Braxton County in 1964, after the Arkansas divorce decree was entered in 1963. The husband did not go to the Arkansas court to request a modification of its decree relating to the sum awarded for support of Virginia Brady and her son. Rather, in his petition presented to the Circuit Court of Braxton County, he recited the proceedings resulting in the decree entered on February 28, 1958, in the separate maintenance suit which ordered him to pay $200 a month; he alleged that he had been granted an abso-

lute divorce in Arkansas on October 10, 1963, and that, therefore, he was not required to pay Virginia Brady anything for her support and his petition concluded with a prayer "that the decree of this Court in said separate maintenance suit be modified, altered and changed in respect to the payment of $200.00 per month to Virginia Brady" by allowing nothing for the support of Virginia Brady and "only a reasonable amount for the maintenance of the son."

If the Arkansas award of $200 is valid and if the West Virginia judgment was thereby superseded and nullified, the West Virginia court had no right, authority or jurisdiction to modify its decree upon the petition of the husband for the very good reason that it was void. In the light of his petition to the West Virginia court, invoking its jurisdiction to "modify" its judgment, it ill becomes him to assert that the West Virginia judgment has been superseded and nullified.

This Court has now told the husband, the wife, and apparently the son also, that if they want to relitigate matters relating to the $200 award, they must go halfway across the continent to the Arkansas court to do so. It is reasonable to assume that this is wholly contrary to the wishes and convenience of everybody concerned.

It doubtless affords little comfort to the wife to suggest to her, as the Court's opinion apparently does, that she may assail the Arkansas divorce in this state on "jurisdictional grounds." Perhaps the two terms have the same effect, but it has heretofore been uniformly held that such a foreign divorce may be attacked on the basis of fraud or lack of jurisdiction. *Gardner v. Gardner*, 144 W. Va. 630, 110 S. E. 2d 495. If she should institute such a proceeding in this state, or if she should have need to go to Arkansas to resist an effort on the husband's part to have the Arkansas judgment modified, he would doubtless assert that he no longer has any obligation as her husband to bear the expenses she would thereby necessarily incur.

If a husband can transfer the situs of litigation affecting support of his wife and child from West Virginia to Arkansas, as the Court has permitted the husband to do in this case, he can, in like manner transfer such matters to a court in Alaska or Hawaii, thereby imposing an even greater burden on his wife and child in the protection of their rights. If the Arkansas court, in granting a divorce of such doubtful validity in the face of an appropriate attack, had jurisdiction to make an award of support in the sum of $200, thereby superseding and nullifying an in personam judgment of a West Virginia court of general jurisdiction, then it would seem to follow that, with like effect, the Arkansas court could have made an award of a mere pittance, such as $5 a month for the support of the wife and son.

The majority opinion cites *Chapman v. Parsons,* 66 W. Va. 307, 66 S.E. 461, and two later decisions of this Court for the proposition that a decree of absolute divorce terminates the right of the wife to separate maintenance and support. At most, these cases stand for the proposition that a monetary award to a wife in a separate maintenance action is terminated by a subsequent divorce of the same parties in the same court in this state, whether alimony is awarded or denied in the divorce action. While I have no quarrel with the soundness of that legal proposition, I consider these authorities wholly inapposite, even to the extent that they support the proposition for which they are cited. Such cases involved courts which had the unquestionable jurisdiction to award or to refuse to award alimony and they do not, even in the most remote degree, involve the full faith and credit provision of the Constitution.

I am not disposed to lengthen this opinion further by attempting a detailed discussion of legal principles involved; and my situation, at this time, does not afford me time to do so. My position, simply stated, is that a proper analysis and application of the authori-

ties cited in the majority opinion will effectively refute the holding of the Court in this case and cause the majority opinion to fall of its own weight.

We must not lose sight of the fact that the decisions of the Supreme Court of the United States construing the full faith and credit provision and other provisions of the Constitution of the United States are binding on all the states and must be followed by each state, even though in conflict with the prior decisions of the highest appellate court of the state. *State ex rel. Battle v. B. D. Bailey & Sons, Inc.*, 150 W. Va. 37, pt. 2 syl., 146 S.E. 2d 686. In this area, therefore, we must look to the decisions of the Supreme Court of the United States rather than to deviations from or qualifications of such decisions by the courts of California or other states.

In support of my dissent, I wish to make specific reference to *Estin v. Estin*, 334 U.S. 541, 68 S. Ct. 1213, 92 L. Ed. 1561, 1 A.L.R. 2d 1412, followed by the annotation beginning in 1 A.L.R. 2d at page 1423; Anno. 28 A.L.R. 2d 1378; 24 Am. Jur. 2d, Divorce and Separation, Sections 991-93, pages 1128-1130.

For reasons stated in this opinion, I would affirm the judgment of the Circuit Court of Nicholas County.