542 S.E.2d 911

**Nancy Jo BURNETT, Plaintiff below, Appellant,**

v.

**Clarence Lee BURNETT, Defendant below, Appellee.**

No. 27758.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 20, 2000.

Decided Dec. 8, 2000.

Beverly S. Selby, Charleston, for the Appellant.

Merrille J. Steager, South Charleston, for the Appellee.

STARCHER, Justice:

On appeal, Nancy Jo Burnett ("appellant") appeals an order of the Boone County Circuit Court dated September 21, 1999. The circuit court held that it lacked *in personam* jurisdiction over Clarence Burnett ("appellee"), a resident of Arkansas, and refused to enforce an order entered by a West Virginia court in 1983 requiring the appellee to pay child support to the appellant. The 1983 order was entered when the appellee submitted to the West Virginia court's jurisdiction as part of a separate maintenance action.[1]

For reasons explained in this opinion, we reverse the decision of the circuit court and remand this matter for further proceedings.

## I.

### Facts & Background

On June 8, 1969, the appellant and appellee were married in Boone County, West Virginia. The appellant had been a life-long resident of West Virginia, and the appellee was a resident of Arkansas. At the time of the wedding the appellee was a member of

---

1. The parties to this case have been involved in four domestic relations actions initiated in West Virginia and two initiated in Arkansas.

the military and was stationed in Bibb County, Georgia.

Between 1969 and 1981, the appellee was stationed at various military bases throughout the United States and Europe. The appellant apparently accompanied appellee on his military assignments. In 1971 the parties had a child.

In 1981, the parties lived in Heidelberg, Germany. Due to difficulties in their relationship, the parties separated, and on July 9, 1981, the appellant and the parties' child returned to Boone County, West Virginia.

On April 29, 1982, the appellant filed a petition for separate maintenance[2] in the Circuit Court of Boone County, West Virginia. The appellee resisted the action at first, but eventually signed a waiver of service and submitted to the jurisdiction of the court. The appellee contemporaneously filed a waiver of his rights under the Soldiers' and Sailors' Civil Relief Act.

The parties entered into a separation agreement on November 12, 1983. The agreement provided that the appellee was to pay to the appellant "$750.00 per month for child support and alimony until the child reaches the age of eighteen."[3]

By order dated December 19, 1983, the judge of the Circuit Court of Boone County granted separate maintenance to the appellant, and incorporated in the order the written agreement entered into by the parties.[4]

On June 29, 1984, the appellant filed a *pro se* action for divorce in West Virginia, and served the appellee, who then resided in Arkansas, by certified mail. The return receipt was received and filed by the Boone County Circuit Clerk.

The appellee next commenced divorce proceedings in Ashley County, Arkansas, on November 21, 1984, and served the appellant by publication.

On December 10, 1984, for reasons that are unclear, the appellant filed a second action for divorce in West Virginia, this time with the assistance of an attorney. This time the appellee was served by publication.

The Arkansas court, for reasons that are not apparent to this Court, determined that it had both subject matter jurisdiction as well as personal jurisdiction over both parties. At the time the divorce proceeding in Arkansas was commenced, the appellant was not a resident of Arkansas, was not served in Arkansas, and did not submit to the jurisdiction of the Arkansas court. Nevertheless, by order dated January 21, 1985, the Arkansas court granted a divorce and awarded the appellant custody of the party's child. The child was in West Virginia with the appellant at this time, and had never lived in Arkansas with the appellee. The court did not award alimony or child support.

Just days before the Arkansas court entered its order, the West Virginia court determined that it had subject matter jurisdiction over the case, but found that it did not have personal jurisdiction over the appellee. The West Virginia court order dated January 18, 1985 granted a divorce to the parties, and also awarded custody of the minor child to the appellant. The court attached to the divorce order both the written separation agreement and the order for separate maintenance from the 1983 separate maintenance action.[5]

2. The appellant's action for separate maintenance was brought under *W.Va.Code*, 48–2–28 [1981], that provided, in pertinent part:

Whenever a spouse shall, without good and sufficient cause, have failed to provide suitable support for the other spouse, or have abandoned or deserted such spouse, or if one spouse shall have grounds for divorce, the court of any county that would have jurisdiction of an action for divorce between the parties, shall, at the action of such spouse, whether or not a divorce be prayed for, order to such spouse as alimony and separate maintenance such sum out of the other spouse's earnings or income as the court may determine, considering the circumstances of the parties and their stations in life[.]

3. The agreement did not specify what part of the $750.00 was for child support.

4. The December 19, 1983 order provided, in pertinent part:

It is further ... ordered ... that the written property settlement agreement made and entered into between the plaintiff [appellant] and defendant [appellee] be, and the same is hereby made the Court's ruling and is made a part of this Order, and attached hereto and made a part hereof.

5. In the order dated January 17, 1985, the circuit court stated: "The parties hereto, on November 12, 1983, entered into a written separation

Contemporaneous with the filing for a divorce in December 1984, the appellant initiated a petition for support under the Uniform Reciprocal Enforcement of Support Act ("URESA")[6] in West Virginia. In 1984, both Arkansas and West Virginia had substantially similar statutes providing for URESA.

Pursuant to the URESA petition, a hearing was held in Arkansas on June 9, 1986, with the appellant appearing through the local Arkansas prosecuting attorney. By order dated June 9, 1986, the Arkansas court ordered the appellee to make child support payments of $75.00 per month. This was in addition to $150.00 the appellee was then paying under garnishment of his military retirement for support arrearages.[7] The Arkansas order did not identify the amount of arrearages, or under what judgment the arrearages were being withheld.

Nothing else occurred in this matter until February 9, 1995, when the West Virginia Child Advocate Office (now Child Support Services) began a wage withholding proceeding in West Virginia to garnish the appellee's military retirement pay for additional arrearages. The Department of Defense honored the garnishment request.

To stop the garnishment of his wages, the appellee, on March 15, 1995, obtained an *ex parte* order from an Arkansas court requiring the Department of Defense to cease any further garnishment actions. The Arkansas court held that the appellee had satisfied his support obligation under the 1986 URESA order. The Department of Defense Finance and Accounting Service declined to honor the Arkansas order, finding that the URESA order had only enforced part of the West Virginia support obligation.

The appellee then filed, in Boone County, West Virginia, a Motion to Dismiss the wage withholding (military wage garnishment) ac-

tion. On August 19, 1996, a hearing was held before a family law master on this motion. The Notice of Hearing to the appellant was sent to the wrong address, and she did not appear for the hearing.

The family law master determined that Child Support Services had exceeded its power in garnishing the appellee's retirement pay. The family law master recommended that the garnishment cease and that no further action be taken to collect arrearages allegedly owed by the appellee.

After learning of the hearing, the appellant, on January 21, 1997, filed a Petition for Review with the Circuit Court of Boone County. Hearings were held on March 3, April 14, and August 23, 1999. No testimony was taken. Rather, legal arguments were made concerning the circuit court's jurisdiction over the appellee during the West Virginia divorce proceeding filed in 1984.

By order dated September 21, 1999, the Circuit Court of Boone County determined that the court had lacked *in personam* jurisdiction over the appellee in 1984, and, therefore, the court could not have properly rendered any decision regarding the rights of the appellee that were to his detriment—including the imposition of any child support. The court ordered that the Child Support Services remove any wage withholding against the appellee and cease any future attempt at collections. The circuit court remanded the matter to the family law master for a determination of the exact amount of money paid by the appellee to determine if the appellee had paid in excess of what he owed.

The appellant now appeals the circuit court's September 21, 1999 order.

agreement, a true copy of which is attached hereto[.]" The order also provided that: "On the 19th day of December, 1983, a decree of separate maintenance between the parties hereto was entered in this Court, incorporating said separation agreement. A true copy of said decree is attached hereto[.]"

6. URESA was contained in *W.Va.Code,* 48–9–1 *et seq.* [1972], but was repealed in 1986.

7. The June 9, 1986, order of the Arkansas court provided, in pertinent part:

7. That the Court further finds that the Defendant's military retirement pay is presently under garnishment, with approximately One Hundred Fifty ($150.00) per month being paid to the Plaintiff against the Defendant under a Judgement for support arrearages.

## II.

### Discussion

██ We apply the standard of review established for family law cases in Syllabus Point 1 of *Burnside v. Burnside*, 194 W.Va. 263, 460 S.E.2d 264 (1995), which provides that questions of law and statutory interpretations are subject to *de novo* analysis.

The appellant contends that the trial court erred in finding that it lacked *in personam* jurisdiction over the appellee, and therefore could not act to garnish the wages of the appellee. The appellant argues that the court had continuing jurisdiction over the appellee by virtue of the separation agreement and the separate maintenance order that were attached to the 1985 divorce order.

The separation agreement was entered into by both parties on November 12, 1983. The agreement was incorporated into the West Virginia separate maintenance order dated December 19, 1983, and both the agreement and the separate maintenance order were attached to the January 18, 1985 West Virginia divorce decree. It is undisputed that the appellee submitted to the jurisdiction of the West Virginia court at the time the parties created the separation agreement. It is also undisputed that the appellee agreed to pay the appellant $750.00 per month for child support and alimony pursuant to the separation agreement.

When the appellee submitted to the jurisdiction of the West Virginia court, he was in the military service; later the appellee resided in Arkansas, where he commenced divorce proceedings in 1984. We note that service for the Arkansas divorce was made by publication on the appellant, and that the appellant did not submit at any time to the jurisdiction of the Arkansas court.

██ It is a fundamental principle of law that a court must possess both *in personam* jurisdiction and subject matter jurisdiction in order to exercise authority in a case. The appellant contends that the Arkansas court did not have *in personam* jurisdiction over her. Consequently, the 1984 Arkansas divorce order could not affect her personal property interests—interests such as child support or alimony—under the "divisible divorce" doctrine.[8]

██ The divisible divorce doctrine was developed by the United States Supreme Court in *Estin v. Estin*, 334 U.S. 541, 68 S.Ct. 1213, 92 L.Ed. 1561 (1948). The doctrine of a divisible divorce is applicable to the present case. In *Estin* the husband and wife were married and lived in New York until they separated. The wife brought an action in New York for separation, and the husband entered a general appearance. The New York court granted the separation and awarded the wife alimony. The husband then went to Nevada and instituted an action for divorce. The wife was notified of the action by constructive service, but entered no appearance. The Nevada court granted the husband a divorce, but made no provision for alimony. The Supreme Court found that the Nevada court did not have *in personam* jurisdiction over the wife because she was not a resident of Nevada nor had she submitted to the jurisdiction of the Nevada court. The Supreme Court held that this situation made the divorce "divisible"—accommodating the interest of both states but restricting each state to the matters of "dominant concern." *Estin*, 334 U.S. at 549, 68 S.Ct. at 1217–18, 92 L.Ed. at 1568–1569. Based on this "divisible divorce," the Court held the Nevada decree was effective only to changing the parties' marital status, but that the order had no effect on alimony.

The appellee contends that *Brady v. Brady*, 151 W.Va. 900, 158 S.E.2d 359 (1967), is controlling. In *Brady* the wife obtained a West Virginia separate maintenance order that required the husband to pay his wife $200.00 a month for maintenance. The husband moved from West Virginia to Arkansas[9] where he obtained an *ex parte* divorce following the wife's West Virginia separate maintenance action. The divorce order entered by the Arkansas court in *Brady*, in conformity with the West Virginia separate

---

**8.** In *Brady v. Brady*, 151 W.Va. 900, 158 S.E.2d 359 (1967), this Court stated in *dicta* that we did not follow the divisible divorce doctrine. We point out that this was *dicta*, and therefore is not controlling. For a discussion on this doctrine *see*

24A Am.Jur.2d *Divorce and Separation* § 1182, "Divisible Divorce."

**9.** *Brady* also involved the Arkansas courts.

maintenance order, ordered the husband to pay his ex-wife $200.00 per month in alimony. After the entry of the Arkansas order, the husband stopped paying any money to his ex-wife. The wife then sought to enforce the separate maintenance order in West Virginia. The Court held that the separate maintenance order had been superseded by the Arkansas divorce order because the wife had not attacked the Arkansas order on a jurisdictional basis.[10]

At first glance it would appear that *Brady* supports the appellee's argument. However, there are important differences between the present case and *Brady*. First, in *Brady* the Arkansas court ordered the husband to pay, in alimony, the exact same amount that he had been ordered to pay his wife in the West Virginia separate maintenance decree. The wife in *Brady*, therefore, could have enforced the Arkansas order—in Arkansas—and obtained the exact same amount of money as was owed her under the West Virginia order. Secondly, we stressed in *Brady* that the wife could have attacked the jurisdiction of the Arkansas decree, something she had failed to do,[11] and had it been found the Arkansas court lacked jurisdiction, then the separate maintenance order would have been enforceable in West Virginia.

Therefore, a close inspection of *Brady* demonstrates that *Brady* supports the appellants' arguments, because we held in *Brady* that a separate maintenance order would not be superseded by a foreign *ex parte* divorce order if the jurisdictional basis of the divorce order was successfully attacked.

■ Based on *Estin*, *supra*, and *Brady*, we hold that a separate maintenance order that is entered by a West Virginia court that has *in personam* jurisdiction over both parties, and that provides for alimony or child support, is not superseded by a subsequent divorce decree obtained in a foreign state where the foreign state did not have *in personam* jurisdiction over both parties.

■ In the present case, Arkansas had no *in personam* jurisdiction over the appellant. Consequently, the Arkansas divorce order did not supersede the West Virginia order for separate maintenance.

The appellant's second argument is that the 1985 West Virginia divorce order incorporated both the separation agreement of the parties and the separate maintenance order; therefore,. the court had continuing jurisdiction in the case.

Conversely, the appellee argues that the West Virginia divorce decree terminates a spouse's right to separate maintenance and support.

■ We have held that "[a] divorce decree, under the laws of West Virginia, terminates the right of a wife to separate maintenance and support." Syllabus Point 2, *Brady*, *supra*. This rule was established because generally the property rights granted in an action for maintenance will be addressed in a divorce action. However, in the case before us, the West Virginia court in January 1985, ruling on the petition for divorce, determined that the court could not grant alimony or child support because it did not have *in personam* jurisdiction over the appellee. The court did, however, "attach" both the 1983 separation agreement and the 1983 order for separate maintenance to the divorce decree.

■ In *In re Estate of Hereford*, 162 W.Va. 477, 250 S.E.2d 45 (1978), we discussed the importance of certain words used in divorce orders and property settlements, including the word "attached." We stated that parties in domestic relations cases may

---

**10.** Syllabus Point 1, of *Brady*, *infra.*, provides, in pertinent part:

In a case where a wife obtains in West Virginia a decree for separate maintenance in a suit asking only for that, and the husband later goes to Arkansas and obtains on constructive service a divorce in which the decree provides for payment of the same amount as was set in West Virginia, the wife cannot thereafter claim under the West Virginia decree but must rely on the Arkansas decree as it is entitled to full faith and credit in West Virginia

unless she successfully attacks the Arkansas decree on the ground that the Arkansas Court did not have jurisdiction to render the decree.

**11.** In *Brady* we stated "[a]lthough there was no personal service on the said [wife] or personal appearance by her in the Arkansas divorce proceedings she did not attack the judgment in any manner and has waived any question as to its validity in its entirety in this proceeding." *Brady*, 151 W.Va. at 903, 158 S.E.2d at 362.

agree to anything in their property settlement agreement, "as long as it is approved by the circuit court." *Hereford*, 162 W.Va. at 487, 250 S.E.2d at 51. We stated that parties could specifically "contract out of any continuing judicial supervision of their relationship by the circuit court[.]" *Id.* We additionally held that "[i]f it appears to the court that the terms are fair and reasonable [the court] may approve them, ratify them or merge them, and by whatever words [the court] uses they shall become part of the decree and binding on everyone including the court." *Hereford*, 162 W.Va. at 487, 250 S.E.2d at 51–52. Finally, we stated:

> [I]n the absence of a specific provision to the contrary in a property settlement agreement appended to, made a part of, or incorporated by reference into the court order, which provision specifically and unambiguously denies the court jurisdiction ... it shall be presumed that ... [a provision for support] is subject to the *continuing jurisdiction* of the circuit court.

*Hereford*, 162 W.Va. at 487–488, 250 S.E.2d at 52 (emphasis added).

We note in the case *sub judice* that neither the separation agreement nor the separate maintenance order specifically stated that the court's jurisdiction would cease. An examination of the separation agreement demonstrates that the parties wanted to "enter an agreement concerning child custody, support, visitation and property rights of the parties[.]" The agreement states that the parties intended to be separated the rest of their lives, and there was no provision in the agreement that the agreement would cease upon obtaining a divorce decree. Therefore, the court had continuing jurisdiction over the support allocated in the separation agreement merged into the separate maintenance order.

The court's jurisdiction over the support provided in the 1983 separation agreement continued after the entry of the 1985 West Virginia divorce order. While the West Virginia divorce decree could sever the bonds of matrimony between the parties, it could not address support unless it had personal jurisdiction over both parties. However, the support provisions of the separate maintenance order continued intact, and were subject to enforcement in the West Virginia court.

Therefore, we hold that a separate maintenance order that requires a party to pay alimony or child support, and that is entered by a West Virginia court that has both subject matter jurisdiction and *in personam* jurisdiction over both parties, is not superseded by a subsequent divorce decree entered by a West Virginia court that lacked *in personam* jurisdiction over one of the parties. When a West Virginia court lacks *in personam* jurisdiction over both parties, the court may grant a divorce through the "divisible divorce" doctrine, that is, the court may only dissolve the bonds of marriage, but it may not adjudicate issues such as alimony and child support as part of the divorce action. A separate maintenance order that requires a party to pay alimony or child support is active and controlling unless and until a court possessing both subject matter jurisdiction and *in personam* jurisdiction over all parties enters a new order.

While we have never addressed the issue of personal jurisdiction continuing in a support action after a divorce decree is entered, we have addressed a comparable issue in *Hartley v. Ungvari*, 173 W.Va. 583, 318 S.E.2d 634 (1984). In *Hartley* the custodial parent obtained a divorce from the non-custodial parent upon constructive service of process. Because the circuit court did not have personal jurisdiction over the noncustodial parent when the divorce was obtained, the circuit court reserved jurisdiction to award child support in the event personal jurisdiction was later acquired over the noncustodial parent. Nine years later the circuit court obtained personal jurisdiction over the non-custodial parent and awarded the custodial parent reimbursement child support. The matter came before this Court on the question of laches. What is important about *Hartley* in relation to this case is how we dealt with the issue of jurisdiction. We stated:

> Under the provisions of *W.Va.Code*, 48–2–15 [1980], where a divorce is granted upon constructive service of process and the divorce order grants custody of a child but makes no further provision for the support of that child, the custodial parent may maintain an action against the noncus-

**756**

todial parent, upon obtaining personal jurisdiction thereof, for reimbursement of reasonable past support expenditures furnished to the child by the custodial parent since the divorce unless, because of circumstances, the custodial parent is estopped from asserting the action.

Syllabus Point 1, *Hartley, supra.*

■■■■ The circuit court in the case *sub judice,* like the circuit court in *Hartley,* could make no direct provision for child support in appellant's divorce action because the court lacked personal jurisdiction over the noncustodial parent. However, the court could, and did, incorporate the terms of the separation agreement in the parties' separate maintenance action, in which the court did have *in personam* jurisdiction over both parties. In *Hartley* we noted that "[m]any jurisdictions have held that where a divorce order grants custody of a child to a parent and no other provision is made for the support of the child, the support obligations of the noncustodial parent are not terminated[.]" *Hartley,* 173 W.Va. at 586, 318 S.E.2d at 636–637. The noncustodial parent's obligation is not terminated because "[t]he duty of a parent to support a child is a basic duty owed by the parent to the child," Syllabus Point 3, in part, *Wyatt v. Wyatt,* 185 W.Va. 472, 408 S.E.2d 51 (1991), and courts should guard "children's rights since they are often voiceless." *Robinson v. McKinney,* 189 W.Va. 459, 463, 432 S.E.2d 543, 547 (1993).

■■■ Being concerned with the support of children, and utilizing the "divisible divorce" doctrine, we stated in Syllabus Point 1 of *Hartley, supra,* that a circuit court may grant an *ex parte* divorce (thereby severing the bonds of marriage), and allow the custodial parent to maintain the action for support against the noncustodial parent until personal service is acquired.

It would be an absurd result if we were to allow a custodial parent to obtain an *ex parte* divorce and defer consideration of the issue of child support until personal service is obtained on the non-custodial parent—as in *Hartley v. Ungvari*—but not allow a custodial parent, who has already been awarded

12. Upon remand there should be a determination of the amount of money owed by and previously

child support *via* a separate maintenance order granted by a court with *in personam* jurisdiction, to enforce the support order when a divorce is granted subsequent to the entry of the order awarding child support.

### III.

#### *Conclusion*

We find that, until a court possessing *in personam* jurisdiction over both parties enters a new order to the contrary, the separate maintenance order entered in 1983 requiring the appellee to pay child support and alimony is still active and controlling. The circuit court therefore erred in ordering Child Support Services to cease its wage [retirement benefits] withholding action against the appellee. We therefore reverse the September 21, 1999 order of the Circuit Court of Boone County, and we remand this case for entry of an order in conformity with this opinion.

Reversed and Remanded.[12]